The **NEQUOIA ASSOCIATION, INC.,** and **G & R Oil Sands Corporation,** Plaintiffs,

v.

The **DEPARTMENT OF the INTERIOR OF the UNITED STATES, et al.,** Defendants.

**Civ. No. C–82–1084W.**

United States District Court, D. Utah, C.D.

Dec. 30, 1985.

Edward W. Clyde, Jeffrey W. Appel, Salt Lake City, Utah, Ken Chamberlain, Richfield, Utah, for plaintiffs.

Brent D. Ward, U.S. Atty., Kathleen B. Barrett, Asst. U.S. Atty., Pierce Elliott, Acting Regional Solicitor, U.S. Dept. of Interior, Salt Lake City, Utah, Gerald S. Fish, Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This matter is before the court on defendants' motion for summary judgment.

The parties fully briefed their arguments and then presented oral argument to this court on September 11, 1985. Ken Chamberlain, Edward W. Clyde and Jeffrey W. Appel appeared on behalf of the plaintiffs, The Nequoia Association, Inc. ("Nequoia") and G & R Oil Sands Corporation ("G & R"). Kathleen Barrett appeared on behalf of the government defendants, the Department of the Interior, the Secretary of the Interior and the Utah State Director of the Bureau of Land Management. The court took the matter under advisement and has fully reviewed the memoranda submitted by the parties and all relevant authority. Being fully advised, the court now renders the following decision and order.

I.

In an attempt to preserve the natural beauty of our National Park System, Congress in 1976 enacted the Mining in the Parks Act, 16 U.S.C. §§ 1901–1912 ("The Act"). The Act prohibits, subject to valid existing rights, the exploration, mining and purchase of all mineral deposits within the National Park System. As a means of identifying valid existing claims, Congress included a requirement that all mining claims within the boundaries of units of the National Park System be recorded with the Secretary of the Interior within one year from enactment of the Act.[1] *See* 16 U.S.C. § 1907. *See also*, 1976 U.S.Code Cong. and Adm.News, pp. 2487–2495. Regulations outlining the specific requirements for recording mining claims were promulgated by the Secretary of the Interior in 41 Fed. Reg. 46357 and in 43 CFR 3831.1 *et. seq.* It was Nequoia's alleged failure to comply with these requirements that created the dispute underlying this lawsuit.

Prior to December 18, 1980, plaintiff Nequoia was the owner and plaintiff G & R was the lessee of 117 unpatented placer mining claims located in Wayne County, Utah. On that date, the Utah State Office,

---

1. The Mining in the Parks Act was enacted on September 28, 1976. Thus, claimants had until September 28, 1977 to record their claims.

Bureau of Land Management ("BLM") issued a decision ("the December 18 decision") declaring their claims to be "abandoned and void" because of failure to record them in accordance with the requirements of section 8 of the Mining in the Parks Act, 16 U.S.C. § 1907. Nequoia did not appeal the December 18 decision but, over eight months later, moved to vacate it. The BLM denied Nequoia's motion and the Interior Board of Land Appeals ("IBLA") dismissed Nequoia's appeal from the BLM's denial. Plaintiffs then filed this action seeking review of the administrative decisions or, in the alternative, seeking compensation for the taking of their property.

## II.

The procedural circumstances from which this case arises are matters of record in the Department of the Interior and are not disputed by the parties.

On September 28, 1977, the last possible day for recording claims under the Mining in the Parks Act, Howard Silliman ("Silliman"), Secretary of Nequoia, filed with the Utah Minerals Office of the National Park Service ("NPS") a copy of a press release [2] with a handwritten notation on the bottom reading "Sirs: Please Record," followed by

Silliman's signature, and accompanied by a list of 117 unpatented mining claims. With respect to each claim, the list specified the name of the claim, the dates, the book and the page in which such claim was recorded in county records, and the legal subdivision the claim "would probably embrace" if the land therein were surveyed. Silliman also submitted maps which purportedly depicted the claims.

By a letter dated November 10, 1977, Harold A. Ellingson of the NPS advised Silliman that Nequoia's submission was deficient. Specifically, Ellingson pointed out that the filing did not contain "copies of location notices" or "maps with the individual claims clearly identified" as required by the regulations promulgated pursuant to the Mining in the Parks Act.[3]

NPS received no response to Mr. Ellingson's letter. Consequently, by a decision dated December 18, 1980, the Utah State Office of the BLM declared Nequoia's claims to be "abandoned and void" for failure to record the claims on or before September 28, 1977 as required by 16 U.S.C. § 1907 and the accompanying regulations.

The December 18 decision notified Nequoia of its right to appeal the decision to the IBLA within thirty days pursuant to the

2. The document on which Mr. Silliman submitted his request for recordation was a copy of a press release issued by the NPS on July 12, 1977, reminding the public "that unpatented mining claims located on park-administered lands must be recorded on or before September 28, 1977," and advising that detailed "information on the recording procedure is available from the Superintendent of the park area in which the claim is located."

3. Section 8 of the Act, 16 U.S.C. § 1907, provides in pertinent part:

All mining claims under the Mining Law of 1872, as amended and supplemented * * * which lie within the boundaries of units of the National Park System shall be recorded with the Secretary of the Interior within one year after September 28, 1976. Any mining claim not so recorded shall be conclusively presumed to be abandoned and shall be void. * * * Within thirty days following September 28, 1976, the Secretary shall publish notice of the requirement for such recordation in the Federal Register. * * *

Pursuant to the Act, notice was published in the Federal Register on October 20, 1976 (41 Fed. Reg. 46357), that:

* * * [A]ll unpatented mining claims which lie within the boundaries of units of the National Park System shall be recorded with the Superintendent of the Unit in which they are located on or before September 28, 1977. * * This recordation shall include, but is not limited to, the following instruments and information:

(1) A certified copy of each location notice which shall provide: Name of claim, locator(s); type (placer, lode, millsite, or tunnel); mineral(s) for which claim was located; date of location; date of amendments or relocations, if any; recording date book, page, county and state, where recorded; and a legal description of the lands included in the mining claim(s). * * *

(2) Plot of claim on a 7.5 or 15 minute series U.S. Geological Survey topographical map if the area is covered by either series. If not, a plot on any other accurate map.

regulations found in 43 C.F.R. Part 4, Subpart E. Thirty days passed and Nequoia did not appeal. Therefore, on February 27, 1981, the BLM notified Nequoia that the case was closed.

Almost nine months after the December 18 decision declaring the claims "abandoned and void," Nequoia filed a motion to vacate the decision with the Utah State Office of the BLM. The basis for the motion to vacate was that the decision had been issued "without warrant and authority of law" and that Nequoia had been "denied the full hearing" to which it was entitled.

On October 16, 1981, the Chief of the Branch of Lands and Mineral Operations of the BLM notified Nequoia by letter that its motion to vacate the December 18 decision would not be recognized. The letter reasoned that:

> Records to the file show that Nequoia Association received [the December 18] decision on December 20, 1980. Accordingly, the right of appeal to IBLA expired after January 30, 1981. Nequoia Association filed a "Notice to Vacate" said decision in the Utah State Office on September 16, 1981, over eight and one half (8½) months after the expiration of the appeal period.
>
> Therefore, the said "Notice to Vacate" shall not be recognized and heretofore claims remain abandoned and void. Case closed.

One month later on November 16, 1981, Ken Chamberlain ("Chamberlain"), counsel for Nequoia and G & R, filed with the IBLA a notice of appeal from the October 16 ruling. Attached to the notice was a memorandum outlining the reasons that the BLM decision should be reversed. The reasons identified at that time were that the BLM had issued the December 18 decision without holding a hearing as required by the Administrative Procedure Act, 5 U.S.C. § 554(c)(1), that the decision contained a false declaration, that the duty of conducting hearings had been unlawfully delegated and that the Mining in the Parks Act did not give the NPS jurisdiction over the area in which Nequoia's claims were located.

The IBLA dismissed Nequoia's appeal by a decision dated December 23, 1981, *Nequoia Association*, 60 IBLA 386. Like the BLM, the IBLA refused to recognize an appeal made under the guise of a motion to vacate when the time period for filing an appeal had expired. The Appeals Board stated:

> The regulations require that a notice of appeal must be filed within 30 days after the person taking the appeal is served with the decision from which the appeal is taken. 43 CFR 4.411(a). This Board has held that the timely filing of a notice of appeal is required to establish the jurisdiction of the Board to review the decision below and that the failure to file the appeal within the time allowed mandates dismissal of the appeal. [citations omitted.] Although this Board is generally reluctant to take any action which would preclude review of appeals on the merits, the purpose of the rule is to establish a definite time when administrative proceedings regarding a claim are at an end, in order to protect other parties to the proceedings and the public interest, and strict adherence to rule is required. [citation omitted.]
>
> Since Nequoia did not file a notice of appeal of the December 18, 1980, BLM decision within the 30-day period for appeal, the BLM decision became final, the mining claims are considered abandoned and void, and this proceeding must be dismissed.

After holding that the appeal must be dismissed, the IBLA nevertheless briefly addressed the substantive arguments raised by Nequoia regarding the December 18 decision and found them all to be without merit.

The IBLA's dismissal of Nequoia's appeal constituted final agency action in this matter. *See* 43 C.F.R. 4.21(c). Nequoia and G & R then filed this suit in district court. Their complaint contains two causes of action. Under the first, plaintiffs assert that the BLM and IBLA decisions were

arbitrary, capricious and contrary to law and that the December 18 decision was made in contravention of the procedures required by the Administrative Procedure Act, 5 U.S.C. § 554(c)(1). Under the second cause, plaintiffs argue that they are entitled to compensation for the taking of their property pursuant to 16 U.S.C. § 1910. The prayer for relief asks this court for a judgment declaring the BLM and IBLA decisions void and of no force and also declaring the validity of plaintiffs' mining claims. In the alternative, plaintiffs ask that this court render a judgment awarding them compensation for the taking of their property.

The Department of the Interior and the other government defendants (hereinafter collectively referred to as "Interior") moved for summary judgment arguing that Nequoia's appeal to the IBLA was properly dismissed as a matter of law and that this court cannot reach the merits of Nequoia's contentions regarding the December 18 decision because Nequoia failed to file a timely notice of appeal from that decision. In the alternative, defendants argue that if this court reaches the merits of that decision, it should hold that Nequoia's mining claims were properly declared abandoned and void. Finally, with regard to plaintiffs' claim for just compensation, defendants argue that plaintiffs have failed to state a claim which establishes a "taking" of their property.

### III.

■ Interior's motion with regard to Nequoia's first cause of action raises two issues. The first is the narrow issue of whether the IBLA properly dismissed Nequoia's appeal from the BLM's decision denying the motion to vacate the December 18 decision. The second involves Nequoia's claims of error with regard to the December 18 decision itself. It is clear that the

latter is the real issue which Nequoia seeks to resolve on this appeal.[4] Before reaching that issue however, we must consider whether Nequoia's failure to appeal the December 18 decision precludes review of it on the merits.

We turn first to the propriety of the IBLA's decision to dismiss Nequoia's appeal. In reviewing their decision, we are cognizant of the "simple but fundamental rule of administrative law ... that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." *Securities & Exchange Commission v. Chenery Corporation*, 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947).

The ground invoked by the IBLA for dismissing Nequoia's appeal was Nequoia's failure to file a timely notice of appeal from the December 18 decision.[5] This court is therefore limited to reviewing whether Nequoia's failure to file in time warranted dismissal of their appeal. A review of the relevant case law and regulations makes it clear that dismissal on such grounds was not improper.

The Secretary of the Interior has provided by regulation that:

(a) A person who wishes to appeal to the Board [of Land Appeals] must file in the office of the officer who made the decision (not the Board) a notice that he wishes to appeal. The notice of appeal * * * must be transmitted in time to be filed within 30 days after the person taking the appeal is served with the decision from which he is appealing. * * *

(b) No extension of time will be granted for filing the notice of appeal. If a notice of appeal is filed after the grace period provided in § 4.401(a), the notice

---

**4.** The substantive arguments raised by plaintiffs in this appeal are arguments that would have been properly raised on direct appeal from the December 18 decision. The fact that Nequoia allowed the appeal period to expire and then filed an appeal in the guise of a motion to vacate has pushed this case into a confused procedural status and obfuscated the real issues.

**5.** In essence, the IBLA treated the motion to vacate the December 18 decision as an untimely appeal from that decision.

of appeal will not be considered and the case will be closed by the officer from whose decision the appeal is taken. * *

43 C.F.R. § 4.411.

Because Nequoia's motion to vacate was in reality an appeal claiming error in a decision for which the appeals period had long expired, the IBLA was compelled by the regulations to deny the motion. The authority of the Secretary of Interior to impose such a time limit on the appeals process is not questioned by the plaintiffs.[6] In fact, plaintiffs' only response to defendant's argument regarding the appeals period is that they did not receive proper notice of the December 18 decision and that the 30 day appeals period therefore did not begin to run.[7]

It may well be that there is merit to plaintiffs' claims regarding lack of proper notice. It is odd, however, that the notice issue was never raised below at the administrative level. In alleging insufficient notice, plaintiffs are attempting to inject an entirely new issue into the litigation; one not raised during agency proceedings. The BLM's decision denying Nequoia's motion to vacate the December 18 decision was clear in its holding that the reason for its denial was the expiration of the appeal period. Yet, when Nequoia appealed the BLM decision to the IBLA, it never alleged inadequate notice with regard to the December 18 decision.[8] Rather, it concentrated solely on allegations of substantive errors in that decision.[9]

The Supreme Court has reasoned that orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts.... Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.

*United States v. Tucker Truck Lines, Inc.,* 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952).

It is on the basis of this reasoning that several courts have held that in reviewing agency decisions, courts will not consider questions which were neither presented to nor passed on by the agency. *See e.g., Myron v. Martin,* 670 F.2d 49, 51 (5th Cir.1982), *Ensey v. Richardson,* 469 F.2d 664, 666 (9th Cir.1972).

---

6. The Secretary has been given broad authority to issue regulations necessary in executing the statutes relating to public lands. *See* 43 U.S.C. § 1201. *See also, Best v. Humboldt Placer Mining Co.,* 371 U.S. 334, 336, 83 S.Ct. 379, 382, 9 L.Ed.2d 350 (1963). The courts have particularly noted that agencies have discretion to formulate and interpret their own procedural rules. *Federal Trade Commission v. Anderson,* 631 F.2d 741, 745–46 (D.C.Cir.1979).

7. Nequoia asserts that it notified the BLM on December 8, 1980 and that it notified the NPS on December 9, 1980 that all further communications regarding the claims in question should be addressed to Ken Chamberlain, attorney for Nequoia and G & R. The December 18 decision, however, was mailed only to plaintiff Nequoia. Plaintiffs assert that Howard Silliman, Secretary for Nequoia who received the December 18 decision, did not notify either G & R, Ken Chamberlain or any legal counsel of the decision because he assumed that the decision had also been mailed to Chamberlain.

It is worth noting, however, that Nequoia was properly notified in a letter dated November 10, 1977 that its filing was deficient. The record contains no evidence that Nequoia made any attempt to correct those deficiencies.

8. While the motion to vacate the December 18 decision was filed only in the name of Nequoia, G & R was aware of the December 18 decision before Nequoia's motion to vacate was filed with the BLM. *See* Plaintiffs' Memo in Opposition to Summary Judgment Motion, p. 2. Yet, G & R, which was represented by the same counsel as Nequoia, made no attempt to intervene in the proceedings or raise the notice issue as it pertained to it.

9. Nequoia's counsel in its appeal to the IBLA was Ken Chamberlain, the counsel upon whom plaintiffs contend the December 18 decision should have been served. Thus, counsel for Nequoia and G & R was necessarily aware of any notice problem at the time of the appeal to the IBLA.

■ We therefore hold that plaintiffs' failure to raise the notice issue on the administrative level precludes its consideration here. Our consideration of the propriety of the IBLA's decision is "limited to an examination of whether the decision of the Board was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence or not in accordance with the law." *Melluzzo v. Watt*, 674 F.2d 819, 820 (9th Cir.1982) (per curiam). Inasmuch as the alleged notice problem was not argued to the IBLA and inasmuch as plaintiffs have been unable to point to any other error in the IBLA's dismissal of the appeal, we conclude that the holding of the IBLA was not arbitrary, capricious or contrary to law and therefore must be upheld.

■ We next turn to Nequoia's claims of error regarding the December 18 decision. First, however we must determine whether the ultimate question of the correctness of that decision may be raised here notwithstanding our holding that the IBLA properly dismissed Nequoia's appeal.

Defendants argue that plaintiff's failure to timely appeal the December 18 decision precludes them from obtaining review of that decision in this court. The underlying theory of their argument is that a litigant must exhaust his administrative remedies as a prerequisite to invoking the jurisdiction of a federal court. Plaintiffs disagree. They point to section 704 of the Administrative Procedure Act, 5 U.S.C. § 704, which provides that appeal to a superior agency authority is not a prerequisite to judicial review of agency action unless the "operative effect" of the agency action is stayed during the period for appeal. They argue that the December 18 decision did not by its terms stay its "operative effect"

and therefore that Nequoia's failure to appeal that decision does not preclude its review by this court.

The questions raised by these arguments are complex. Determination of when the "operative effect" of a decision is stayed as that phrase is used in section 704 is particularly difficult when the decision is one involving a declaration of fact as is the December 18 decision.[10] The place to begin our examination is with the language of section 704 which provides:

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

■ The language of section 704 precludes judicial review of the December 18 decision only if Interior had specified for the decision to be inoperative during the appeals period. The December 18 decision itself did not specify anything regarding when it was to take operative effect. The record is void of any information concerning when or if the decision took effect.[11] However, the General Rules Relating to

**10.** A well recognized exception to the exhaustion requirement is in cases where the question at issue is solely one of statutory interpretation. *See Rocky Mountain Oil and Gas Association v. Watt*, 696 F.2d 734, 744 (10th Cir.1982). In the instant case, however, the issue before the court is not one of pure statutory interpretation but one involving application of a statute to a given set of facts. Were we to apply the statutory interpretation exception to this case, we would be undermining the theoretical basis for the exhaustion requirement inasmuch as almost every case in some way involves statutory interpretation. *See Shick v. Farmers Home Administration*, 583 F.Supp. 534, 537–38 (D.Mass.), *aff'd in part*, 748 F.2d 35 (1st Cir.1984).

**11.** It is questionable whether a declaration of fact such as the holding of the December 18 decision has any operative effect to be stayed as that term is used in 5 U.S.C. § 704. *See* note 9, *supra.*

Procedures and Practice in the Department of Interior provide:

(a) Effect of decision pending appeal. Except as otherwise provided by law or other pertinent regulation, a decision will not be effective during the time in which a person adversely affected may file a notice of appeal and the timely filing of a notice of appeal will suspend the effect of the decision appealed from pending the decision on appeal. However, when the public interest requires, the Director or an Appeals Board may provide that a decision or any part of it shall be in full force and effect immediately.

(b) Exhaustion of administrative remedies. No decision which at the time of its rendition is subject to appeal to the Director or an Appeals Board shall be considered final so as to be agency action subject to judicial review under 5 U.S.C. 704, unless it has been made effective pending a decision on appeal in the manner provided in paragraph (a) of this section.

43 C.F.R. § 421.

The one fact made clear by Interior regulations is that the Secretary intended exhaustion of administrative remedies to be a prerequisite to judicial review of Interior Department decisions. Pursuant to this regulation, in the absence of any specification to the contrary, decisions of the Hearings Division of the Department of the Interior are not considered final agency action for purposes of 5 U.S.C. § 704. Therefore, under relevant regulations, the plaintiffs' failure to appeal the December 18 decision precludes our review of the merits of that decision.

█ Case law also supports the conclusion that the failure to appeal the December 18 decision proscribes any later judicial review. It is a well recognized general rule that a litigant must exhaust available administrative remedies prior to seeking judicial review. *McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969); *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50-51, 58 S.Ct. 459, 463-64, 82 L.Ed. 638 (1938);

*Rocky Mountain Oil and Gas Association v. Watt,* 696 F.2d 734, 743 (10th Cir.1982), *McGrath v. Weinberger,* 541 F.2d 249 (10th Cir.1976), *cert. denied,* 430 U.S. 933, 97 S.Ct. 1557, 51 L.Ed.2d 778 (1977); *Martinez v. Richardson,* 472 F.2d 1121, 1125 (10th Cir.1973). Although well recognized, the doctrine is not absolute. It has been described as a jurisprudential doctrine calling for evaluation of the specific circumstances of the particular case. *I.A.M. National Pension Fund Benefit Plan C v. Stockton Tri Industries,* 727 F.2d 1204, 1208 (D.C. Cir.1984). As such it is generally applied both to avoid interruption of the administrative process and to foreclose resort to the courts where the opportunity for administrative review has been lost through a litigant's failure to pursue available administrative remedies. *See McKart,* 395 U.S. at 193, 89 S.Ct. at 1662; *Stephens v. Postmaster General,* 623 F.2d 594 (9th Cir. 1980); *Ensey v. Richardson,* 469 F.2d 664, 666 (9th Cir.1972); *Burnham Chemical v. Krug,* 81 F.Supp. 911, 913 (D.D.C.1949), *aff'd* 181 F.2d 288 (D.C.Cir.) *cert. denied,* 340 U.S. 826, 71 S.Ct. 60, 95 L.Ed. 606 (1950).

The Supreme Court has recognized that the reasons justifying application of the exhaustion requirement are present in cases such as this where a party has failed to appeal an administrative decision. These reasons are aptly illuminated by the opinion of the court in *McKart v. United States.*

Some of [the reasons for requiring exhaustion] apply equally to cases like the present one, where the administrative process is at an end and a party seeks judicial review of a decision that was not appealed through the administrative process. Particularly, judicial review may be hindered by the failure of the litigant to allow the agency to make a factual record, or to exercise its discretion or apply its expertise. In addition, other justifications for requiring exhaustion in cases of this sort have nothing to do with the dangers of interruption of the administrative process. Certain very practical

notions of judicial efficiency come into play as well. A complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene. And notions of administrative autonomy require that the agency be given a chance to discover and correct its own errors. Finally, it is possible that frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.

395 U.S. at 194, 195, 89 S.Ct. at 1662–63.

In this case, it is possible that pursuit of all available administrative remedies may have resolved the dispute or at least provided a full factual record upon which a court could review the issues. *See Craycroft v. Ferrall,* 408 F.2d 587 (9th Cir.1969) *vacated on other grounds,* 397 U.S. 335, 90 S.Ct. 1152, 25 L.Ed.2d 351 (1970). Had the IBLA been confronted with a direct appeal from the December 18 decision, it would have been able to consider Nequoia's arguments, perhaps resolve the controversy and at least would have developed the record with regard to the extent to which Interior had searched its files for material complying with the filing requirements imposed by the Mining in the Parks Act.[12]

Application of the exhaustion theory to this case is further warranted by a concern for finality. By regulation, the Secretary of Interior has provided that appeals to the IBLA be commenced within thirty days of the date of the decision from which appeal is sought. *See* 43 C.F.R. 4.41(a). One of the reasons behind such a time limitation is necessarily a concern for finality. Parties to administrative proceedings have an interest in knowing when decisions are final and on which decisions their reliance can be placed. Allowing Nequoia to file a motion to vacate almost nine months after the December 18 decision and allowing it to question the validity of that decision in this court almost two years after the decision and eleven months after the IBLA's dismissal of the appeal is certainly at odds with the need for finality.[13] We therefore hold that the plaintiffs' failure to timely appeal the December 18 decision to the IBLA precludes our review of the merits of that decision.

## IV.

The final issue presented by this case is whether plaintiffs are entitled to a trial to determine compensation for the taking of their property pursuant to 16 U.S.C. § 1910.[14] Defendants argue that plaintiffs have failed to allege facts from which a

---

**12.** There is a factual dispute as to exactly what information regarding Nequoia's claims existed within the files of the NPS prior to Nequoia's filing on September 28, 1977 and as to what information was reviewed by the BLM in concluding that Nequoia's filing was insufficient and that its claims were therefore abandoned and void.

Plaintiffs allege that the information allegedly absent from the September 28 filing, e.g., an accurate map identifying each claim, was already in the files of the NPS and that Interior had a duty to consider this additional information when passing on the validity of Nequoia's claims. Had we reached the merits of the December 18 decision, the questions of exactly what information was in the agency files, when it was filed and whether the NPS was aware of such information may well have been material to our analysis. Because of Nequoia's failure to appeal, however, the factual record regarding the information in the files was never developed.

**13.** While there is no statutory time limit for judicial review of a decision of the IBLA, judicial review of such decisions is still subject to general principles of estoppel and the rules of pleading imposed by the Federal Rules of Civil Procedure. *United States v. Webb,* 655 F.2d 977, 979 (9th Cir.1981).

**14.** 16 U.S.C. § 1910 provides:

The holder of any patented or unpatented mining claim subject to this Act who believes he has suffered a loss by operation of this Act, or by orders or regulations issued pursuant thereto, may bring an action in a United States district court to recover just compensation, which shall be awarded if the court finds that such loss constitutes a taking of property compensable under the constitution. The court shall expedite its consideration of any claim brought pursuant to this section.

taking of their property could be found. We find defendants' argument well taken.

In *United States v. Locke,* —— U.S. ——, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985), the Supreme Court confronted similar arguments made by claimants whose mining claims were extinguished under the Federal Land Policy and Management Act for failure to make a timely annual filing. In holding that no taking which required compensation had occurred, the Court noted that it had never required Congress to compensate an owner for the consequences of his own neglect. It then went on to reason that:

> [a]ppellees failed to inform themselves of the proper filing deadline and failed to file in timely fashion the documents required by federal law. Their property loss was one appellees could have avoided with minimal burden; it was their failure to file on time—not the action of Congress—that caused the property right to be extinguished. Regulation of property rights does not "take" private property when an individual's reasonable, investment-backed expectations can continue to be realized as long as he complies with reasonable regulatory restrictions the legislature has imposed.

105 S.Ct. at 1799, 85 L.Ed.2d 64.

We find that *Locke* is controlling in this case. Like the appellees in *Locke,* the plaintiffs here lost their claims because of their own failure to comply with reasonable regulations imposed by Congress. Congress did not "take" plaintiffs' mining claims. Rather, plaintiffs gave up those claims when they waited until the last possible day for filing, when they filed insufficiently and also when they failed to appeal their loss through prescribed administrative channels. We therefore hold that plaintiffs' claim under 16 U.S.C. § 1910 for the taking of their property is dismissed.

Accordingly,

IT IS HEREBY ORDERED that the defendants' motion for summary judgment is granted and this action is dismissed with prejudice.