658 F.Supp. 1469 (1987)
NEW YORK STATE TEAMSTERS CONFERENCE PENSION & RETIREMENT FUND, by its trustees, T. Edward Nolan, Curtis Gundersen, Richard Muller, Rocco F. DePerno, Paul E. Bush, and Jack Canzoneri, in their representative capacities, Plaintiff,
v.
McNICHOLAS TRANSPORTATION COMPANY, Defendant.
No. 84-CV-1299.
United States District Court, N.D. New York.
May 1, 1987.
*1470 Law Offices of Lawrence V. Kelly, New York City, Mead, Begley & Quinlan, Local Counsel, Schenectady, N.Y., Diane B. Walker and William J. Quinlan, of counsel, for plaintiff.
Gracey, Maddin, Cowan & Bird, Robert H. Cowan, of counsel, Nashville, Tenn., for defendant.

MEMORANDUM-DECISION AND ORDER
MUNSON, Chief Judge.
This action requires the court to examine the circumstances under which an employer *1471 may forego a statutorally mandated arbitration process and seek judicial resolution of a dispute arising out of the assessment of withdrawal liability by a plan sponsor under the provisions of the Multiemployer Pension Plan Amendments Act ("MPPAA"). See 29 U.S.C. § 1381 et seq. (1982 & Supp. III 1985). The plaintiff in this action, the New York State Teamsters Conference Pension and Retirement Fund ("the Fund"), moves for an order granting leave to amend the ad damnum clause of the complaint, an order precluding defendant from obtaining discovery, and for summary judgment pursuant to Rule 56, Fed.R. Civ.P.

I. BACKGROUND
The Fund brought this action seeking the accelerated payment of the total amount of the defendant's outstanding withdrawal liability under the MPPAA, together with interest, costs, and attorney fees as provided by 29 U.S.C. §§ 1132(g)(2) and 1451(e). The Fund is a multiemployer pension plan sponsor which receives contributions from various employers pursuant to collective bargaining agreements and stipulations between employers and union locals. Defendant made contributions to the Fund in accordance with the terms of a collective bargaining agreement until September 1982.
Defendant's freight company operated in New York, Ohio and Pennsylvania. On September 7, 1982, negotiations for a new collective bargaining agreement with the Teamsters Steelhaulers Local Union 800 of Pittsburgh, Pennsylvania broke down and the local union went on strike, shutting down defendant's operations in the Pittsburgh area. Several of defendant's primary shippers were located in the Pittsburgh area, and defendant maintains that the strike caused a severe disruption of its business that ultimately forced the company to cease operation entirely on September 28, 1982. The Fund disputes this contention, maintaining that the Pittsburgh strike did not affect defendant's operations in upstate New York, where the employees covered by the Fund were located. Negotiation sessions were held between defendant and the local union in Pittsburgh until March 1983. Meetings between the employer and various labor representatives occurred more sporadically after March 1983. Finally, on November 13, 1985, defendant entered into an interim collective bargaining agreement with the Teamsters National Freight Industry Negotiating Committee.
On February 8, 1983 defendant was notified that the Fund had determined that the company had incurred withdrawal liability and that payments toward this liability should commence within sixty days. In a letter mailed to the Fund dated February 22, 1983, defendant raised the labor dispute exemption set out in 29 U.S.C. § 1398(2)[1] as a defense to the Fund's assessment of withdrawal liability. Defendant claimed that the labor dispute with the Pittsburgh union was the sole reason it ceased making contributions to the Fund, and that defendant never intended to permanently cease contributing to the Fund but instead merely suspended its contributions during the pendency of the labor dispute. On March 9, 1983 the Fund notified defendant that it had rejected defendant's claim that the labor dispute exemption was applicable to this case. In a letter dated March 17, defendant again raised the labor dispute defense. On March 25, defendant was notified that the Fund Policy Committee would review the case to determine whether § 1398 precluded the assessment of withdrawal liability. After reconsidering defendant's position, the Fund again concluded that the labor dispute exemption was unavailable to defendant, and on April 29, 1983 defendant was notified of this determination. On July 1, 1983 defendant demanded arbitration of the matter.

II. DISCUSSION
The MPPAA requires an employer who withdraws in whole or in part from a multiemployer *1472 pension plan to pay a withdrawal liability. 29 U.S.C. § 1381. The amount of the employer's withdrawal liability is calculated by the plan sponsor in the first instance in accordance with a statutory formula. 29 U.S.C. §§ 1382, 1399(b)(1). Upon receiving this notice, the employer has ninety days within which to request that the plan sponsor review its original determination. 29 U.S.C. § 1399(b)(2). Once the plan sponsor has responded to this request, or once 120 days has passed since the date the request was made, the employer has sixty days within which to request arbitration if it is still dissatisfied with the plan sponsor's determination of the fact or the amount of withdrawal liability. 29 U.S.C. § 1401(a)(1).
In the instant case, either the letter dated February 22, 1983 or the letter dated March 17, 1983 could be considered a request by defendant that the Fund review its finding that defendant had incurred withdrawal liability. In either case, the Fund's letter dated April 29, 1983 was a response to defendant's request to review that complies with the requirements of 29 U.S.C. § 1399(b)(2)(B). Defendant did not request arbitration on the claimed labor dispute exemption until July 1, 1983, sixty-three days after it was notified of the Fund's decision on defendant's request for review of its initial determination. Thus, the request for arbitration was clearly untimely. The issue before the court is whether defendant's failure to timely initiate arbitration proceedings precludes this court's review of the Fund's determination that the labor dispute exemption was inapplicable in this case.
The MPPAA requires that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1) (emphasis added). If an arbitration proceeding is not initiated in a timely manner, "the amounts demanded by the plan sponsor ... shall be due and owing on the schedule set forth by the plan sponsor," and the plan sponsor can bring suit in federal court to compel collection. 29 U.S.C. § 1401(b)(1). If arbitration is timely requested, a party may start a proceeding in federal court to enforce, vacate or modify the arbitrator's award within thirty days of the arbitrator's decision. 29 U.S.C. § 1401(b)(2).
In enacting the MPPAA, Congress manifested an unequivocal preference for the initial resolution of disputes between plan sponsors and employers concerning the imposition and amount of withdrawal liability by private arbitrators. Nonetheless, the courts have uniformly concluded that resort to arbitration is not an absolute prerequisite to a district court's jurisdiction over disputes involving §§ 1381-99. See, e.g., T.I.M.E.-DC, Inc. v. Management-Labor Welfare & Pension Funds, 756 F.2d 939, 945 (2d Cir.1985) (hereinafter Longshoreman's Fund); I.A.M. National Pension Fund Benefit Plan C v. Stockton TRI Industries, 727 F.2d 1204, 1207-10 (D.C. Cir.1984) (hereinafter Stockton Industries); Republic Industries v. Teamsters Joint Council No. 83 of Virginia Pension Fund, 718 F.2d 628, 634 (4th Cir.1983), cert. denied, 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984) (hereinafter Virginia Pension Fund); Shelter Framing Corp. v. Pension Benefit Guar. Corp., 705 F.2d 1502, 1508-09 (9th Cir.1983), cert. denied, 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984); Republic Industries v. Central Pennsylvania Teamsters Pension Fund, 693 F.2d 290 (3d Cir.1982) (hereinafter Central Pennsylvania Fund). Instead, the MPPAA's requirement that disputes over withdrawal liability assessments are to be presented to private arbitrators in the first instance has been analogized to statutes that provide for the initial processing of claims through administrative agencies, and the courts have concluded that the policies underlying the jurisprudential doctrine of exhaustion of administrative remedies are generally applicable to the arbitration requirement established by the MPPAA. See Central Pennsylvania Fund, 693 F.2d at 294-95; T.I.M.E.-DC, Inc. v. Trucking Employees of North Jersey Welfare Fund, 560 F.Supp. 294, 302 (E.D.N.Y.1983) (hereinafter North Jersey Fund).
*1473 The exhaustion doctrine requires a party to exhaust available administrative remedies before invoking the jurisdiction of the courts. Myers v. Bethlehem Steel Shipbuilding Corp., 303 U.S. 41, 50-51, 58 S.Ct. 459, 463-464, 82 L.Ed. 638 (1938); Rocky Mountain Oil and Gas Ass'n v. Watt, 696 F.2d 734, 743 (10th Cir.1982). This doctrine reflects a policy of deference to Congress's decision that an arbitration proceeding, and not a federal district court, is the proper forum for the initial factual determinations that must be made to resolve disputes over a statutory scheme Congress has created. Congress has determined as a matter of policy that "an arbitrator skilled in pension and labor matters, like an agency in a given administrative area, is in theory likely to fashion superior resolutions of disputes within the arbitrator's area of expertise," Stockton Industries, 727 F.2d at 1208, and this legislative policy decision should be respected by the courts. The exhaustion doctrine also promotes the autonomy of the arbitration process by preventing judicial interference with arbitration proceedings until the arbitrator has had an opportunity to apply his peculiar expertise to the problem at hand. If the courts allow the "frequent and deliberate flouting" of the arbitration process by parties seeking premature judicial interference with that process, the entire dispute resolution scheme contemplated by Congress in enacting the MPPAA could be irreparably weakened. See McKart v. United States, 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969). Finally, by allowing the arbitrator to apply his superior expertise in developing the "necessary factual background upon which decisions should be based," id. at 194, 89 S.Ct. at 1662-1663, and by resolving many disputes at the arbitration level to the satisfaction of all concerned parties, the interest of judicial economy is furthered by requiring parties to exhaust available non-judicial remedies. Id. at 193-94, 89 S.Ct. at 1662-1663; Central Pennsylvania Fund, 693 F.2d at 294-95; North Jersey Fund, 560 F.Supp. at 302.
When these underlying policies are not served by requiring parties to resort to arbitration in the first instance, courts have been willing to carve out exceptions to the exhaustion doctrine. Thus, when the non-judicial remedy provided is "inadequate to prevent irreparable injury," Central Pennsylvania Fund, 693 F.2d at 293, courts will not require the individual threatened with such harm to proceed to arbitration before seeking judicial intervention. See T.I.M.E.-DC, Inc. v. New York States Teamsters Conference Pension & Retirement Fund, 580 F.Supp. 621, 632-33 (N.D.N.Y.) aff'd, 735 F.2d 60 (2d Cir.1984) (hereinafter New York Fund). Exhaustion is not required when "the issue is one of purely statutory interpretation," Touche Ross & Co. v. Securities & Exchange Comm'n, 609 F.2d 570, 577 (2d Cir.1979), since in such cases there is "no need for [the arbitrator's] expertise or the exercise of [his] discretion." Id. For similar reasons, constitutional questions must be resolved by the courts rather than by arbitrators. Central Pennsylvania Fund, 693 F.2d at 296. Finally, exhaustion of available non-judicial remedies is unnecessary when exhaustion would be an exercise in futility under the circumstances of the particular case. Olympus Corp. v. United States, 627 F.Supp. 911, 916 (E.D.N.Y. 1985). None of these exceptions to the doctrine are applicable in the case at bar, and thus defendant's failure to demand arbitration over the labor dispute exemption issue precludes this court from considering that defense to the Fund's claim in this case.
Defendant argues that because the interpretation of the labor dispute exemption contained in 29 U.S.C. § 1398 is central to its claim that it has not incurred withdrawal liability, the statutory interpretation exception to the exhaustion doctrine renders harmless its failure to demand arbitration on the issue in a timely manner. Defendant's position is inconsistent with the limited scope and underlying justification of the statutory interpretation exception. This exception is applicable only when there are "no significant disputes of fact," Refined Sugars, Inc. v. Local 807 Labor-Management Pension Fund, 580 F.Supp. 1457, 1461 (S.D.N.Y.1984), thus making the application of an arbitrator's peculiar expertise *1474 in pension and labor matters unhelpful to the ultimate legal determination that a court would be required to make. See Longshoreman's Fund, 756 F.2d at 945; Stockton Industries, 727 F.2d at 1210. In this case, there remain unresolved questions of fact concerning whether the Pittsburgh strike was in any way causally related to defendant's decision to cease its operations in New York and to stop making contributions to the Fund. This is precisely the type of fact-based determination that arbitrators, who have had more experience than judges in dealing with the realities of labor-management relations and who have been afforded the luxury of more flexible factfinding powers than is available to a district court, are best equipped to make. See Longshoreman's Fund, 756 F.2d at 945 ("The Act subjects to arbitration factual issues the resolution of which is necessary to calculate withdrawal liability"); cf. Far East Conference v. United States, 342 U.S. 570, 574-75, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952) ("Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.").
The fact that an arbitrator's factual inquiry in a case such as the one at bar would require some statutory interpretation on his part does not mean that the statutory interpretation exception necessarily excuses a party for its failure to initiate arbitration. An arbitrator's responsibilities under the MPPAA necessarily include the interpretation of those statutory provisions (§§ 1381-99) that the Act has committed to arbitral resolution in the first instance. To hold otherwise would render the arbitration requirement of § 1401 a nullity. See Virginia Pension Fund, 718 F.2d at 634 (meaning of "facility" under § 1397(a) is an arbitrable issue); New York State Teamsters Conference Pension & Retirement Fund v. St. Lawrence Transit Mix Co., 612 F.Supp. 1003, 1006 (N.D.N.Y.1985) (hereinafter St. Lawrence Transit Mix) ("Sale of Assets" defense provided in § 1384 is subject to interpretation by arbitrator in the first instance); Combs v. Adkins & Adkins Coal Co., Inc., 597 F.Supp. 122, 127 (D.D.C.1984) ("[A]n arbitrator could have determined whether a `labor dispute' existed within the meaning of section 1398"); contra: Sheet Metal Workers' Pension Fund v. Advanced Metal and Welding Corp., 643 F.Supp. 1201, 1204-06 (N.D.Ga.1986) (Employer does not waive judicial review of "correctness" of plan sponsor's determination of withdrawal liability by failing to initiate arbitration when interpretation of "labor dispute" required).
The "irreparable harm" exception to the exhaustion doctrine is also unavailable to defendant in this case. Exhaustion typically is not required "when the nonjudicial remedy is clearly shown to be inadequate to prevent irreparable injury." Central Pennsylvania Fund, 693 F.2d at 293; see also T.I.M.E.-DC, Inc. v. Western Conference of Teamsters Pension Fund, 7 E.B.C. 2124 (N.D.Cal.1986); New York Fund, 580 F.Supp. at 633. As Judge Miner noted in New York Fund, "the injury required to avoid the arbitration process is the same injury required by law for the issuance of a preliminary injunction." 580 F.Supp. at 633. Most of the cases in which the "irreparable harm" exception has been applied have involved the T.I.M.E.-DC, Inc. freight company. As a result of a protracted strike, T.I.M.E.-DC's net worth plummeted from $12 million to $740,000; its assets were reduced from $40 million to only $8 million; and its cash on hand was reduced to a nominal amount. See Central States, Southeast and Southwest Areas Pension Fund v. T.I.M.E.-DC, Inc., 639 F.Supp. 1468, 1476 (N.D.Tex.1986) (hereinafter Central States). A number of multiemployer plan sponsors claimed withdrawal liability from the company. Under the MPPAA, an employer must make payments toward the withdrawal liability assessed by a plan sponsor pending the outcome of the arbitration proceeding mandated by the Act. 29 U.S.C. § 1401(d). Under the unique conditions faced by T.I.M.E.-DC, the courts found that these interim *1475 payments imposed an enormous financial burden to the company, particularly in light of the fact that several plan sponsors were threatening to pursue withdrawal liability claims. Further, the multiple assessments by the various plan sponsors posed a severe threat to customer confidence at a crucial time in which the company was attempting to recover from the impact of the strike. Thus, in a series of cases the company obtained injunctions preventing the various plan sponsors from pursuing their withdrawal liability claims and avoided the general rule requiring exhaustion of non-judicial remedies before seeking relief from the courts.[2]See T.I.M.E.-DC, Inc. v. Western Conference of Teamsters Pension Trust Fund, No. C-86-3031 (N.D.Cal. September 5, 1986); Central States, 639 F.Supp. 1468; New York Fund, 580 F.Supp. 621.
The present case is distinguishable from the above-cited cases. In this case, the record fails to demonstrate that the financial burden of making interim monthly payments toward the liability assessed by the Fund threatened the very economic existence of defendant corporation, or that the Fund's assessment in any way threatened to undermine customer confidence in the continued economic viability of the company. Moreover, unlike T.I.M.E.-DC, defendant did not seek immediate relief from this court before the applicable time periods set out in the MPPAA had run; instead, it allowed the time within which the Act contemplates the initiation of arbitration to expire without acting in any way. The Third Circuit has found this latter distinction of paramount importance. In Central Pennsylvania Fund, the Third Circuit instructed the district court below to enjoin an arbitration proceeding pending the resolution of a constitutional challenge to the MPPAA. 693 F.2d at 298. In that case, the employer had sought the injunction even before the expiration of the ninety day period for requesting review by the plan sponsor of its initial withdrawal liability assessment. Id. at 292. In IUE AFL-CIO Pension Fund v. Barker & Williamson, Inc., 788 F.2d 118 (3d Cir.1986), the employer seeking to avoid the exhaustion requirement had not acted until after all of the time limits set out in the MPPAA had run. Id. at 128-29. The Third Circuit concluded that under such circumstances, and in the absence of a significant constitutional challenge to the plan sponsor's determination, the employer's "inaction should not be reawarded." Id. at 129; see also Canario v. Byrnes Express & Trucking Co., Inc., 644 F.Supp. 744, 749 (E.D.N.Y.1986). This court agrees, and finds that defendant's failure to act before the expiration of the time within which it was to initiate arbitration precludes a finding of irreparable harm at this point in the litigation.
By failing to demand arbitration in a timely manner, defendant has waived any defense it may have had under § 1398. Cf. St. Lawrence Transit Mix, 612 F.Supp. at 1006 (Failure to arbitrate factual questions under "Sale of Assets" provision of § 1384 constituted waiver of any defense employer had under that provision). Consequently, any discovery relating to the Fund's determination that the labor dispute exemption did not apply to defendant would be pointless. Plaintiff's motion for an order precluding defendant from obtaining discovery is therefore granted. Plaintiff also moves to amend the ad damnum clause of the complaint to increase the amount of defendant's unpaid contributions, which is an essential figure in the calculation of defendant's withdrawal liability, from $124,954 to $127,236. This motion must be denied. The strict time limits imposed by Congress in the Act are in part intended to further the interest of finality in withdrawal liability assessments. Cf. Nequoia Ass'n Inc. v. Department of Interior, 626 F.Supp. 827, 836 (D.Utah 1985) (Exhaustion doctrine barred action to vacate determination of Bureau of Land Management because said determination *1476 was not appealed in a timely manner; "[p]arties to administrative proceedings have an interest in knowing when decisions are final and on which decisions their reliance can be placed."); contra: Combs v. Adkins & Adkins Coal Co., Inc., 597 F.Supp. 122, 127 n. 5 (D.D.C.1984). Just as defendant's failure to demand arbitration in a timely manner precludes it from contesting the fact or amount of withdrawal liability, the Fund is also bound by its original calculation and the amount that was communicated to defendant on February 8, 1983.[3]
Since defendant has not made any payments to date on the withdrawal liability assessed by the Fund, defendant is in "default" within the meaning of 29 U.S.C. § 1399(c)(5). Therefore, the entire amount of defendant's withdrawal liability is due and owing. Id. Under 29 U.S.C. § 1132(g)(2), the Fund is entitled to the unpaid contributions, interest on the unpaid contributions from the date on which the first monthly payment was due under the schedule prepared by the fund, liquidated damages and reasonable attorney fees, and the costs of this action. See Combs v. Western Coal Corp, 611 F.Supp. 917, 922-23 (D.D.C.1985); Board of Trustees v. Johnson, 606 F.Supp. 231, 234-35 (W.D. Wash.1985).

III. CONCLUSION
The Fund's motion for an order precluding defendant from obtaining discovery is granted. The fund's motion to amend the ad damnum clause of the complaint is denied. The Fund's motion for summary judgment is granted. The Fund shall submit a proposed judgment to the court within twenty days of the date of this order. Defendant shall have an additional twenty days within which to make objections to the proposed judgment.
It is so Ordered.
NOTES
[1] Section 1398(2) provides that "[n]otwithstanding any other provision of this part, an employer shall not be considered to have withdrawn from a plan solely because ... an employer suspends contributions under the plan during a labor dispute involving its employees." 29 U.S.C. § 1398(2).
[2] Injunctions were also issued in T.I.M.E.-DC, Inc. v. I.A.M. National Pension Fund, 597 F.Supp. 256 (D.D.C.1984) and North Jersey Fund, 560 F.Supp. 294. In the former case, the court did not address the exhaustion issue in the text of the opinion. In North Jersey Fund, the court found that the "central facts [were] not in dispute" and concluded that the statutory interpretation exception was applicable. 560 F.Supp. at 302-03.
[3] In denying the Fund's motion to increase the ad damnum clause of the complaint, the court does not decide whether the Fund is precluded from demanding the additional amount sought from defendant under 29 U.S.C. § 1399. The court notes, however, that § 1399(b)(1) requires the plan sponsor to notify the employer of the amount of its liability "[a]s soon as practicable after [its] complete or partial withdrawal." 29 U.S.C. § 1399(b)(1)(A). Whether the Fund can make a supplemental demand under § 1399 four years after defendant's withdrawal is not an issue properly before the court.