**Helen DEBRECENI, Plaintiff,**

v.

**MERCHANTS TERMINAL CORP., and Terminal Refrigeration & Warehousing, Inc., Defendants.**

**Civ. A. No. 87–0692–WD.**

United States District Court, D. Massachusetts.

Feb. 23, 1989.

Gerard F. Daley, James T. Grady, Grady, Dumont and Dwyer, Boston, Mass., for plaintiff.

Arvid E. Roach II, Virginia Watkin, Covington & Burling, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

WOODLOCK, District Judge.

### I.

In this case the parties have come belatedly to court to effect implementation of the relatively mechanical procedures Congress established to expedite resolution of claims concerning withdrawal liability under multiemployer pension plans.

Before this action began, the plaintiff pension fund manager chose for over three years not to demand prompt judicial enforcement of her fund's rights to interim payments of that liability. For their part

the defendants did not seek to compel prompt arbitration of their dispute concerning the extent of withdrawal liability until they filed a counterclaim in this action.

I will grant the parties' respective belated requests in a manner calibrated to reflect the consequences of the leisurely approach they have taken to enforcement proceedings.

### II.

The plaintiff, Helen Debreceni, is the manager of the New England Teamsters & Trucking Industry Pension Fund ("the Fund"), and defendants and counterclaim plaintiffs, Merchants Terminal Corporation and Terminal Refrigeration & Warehousing, Inc., (collectively "Merchants"), are participating employers in the Fund, a multiemployer pension plan within the meaning of the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), codified at 29 U.S.C. §§ 1381–1461 (1982).

Prior to November, 1982, Motor Freight, a company in which Merchants owned almost all the voting stock, was obligated under the MPPAA to contribute to the Fund on behalf of its employees. On November 12, 1982, Motor Freight ceased its operations and withdrew from the Fund. On June 30, 1983, the Fund notified Merchants that their withdrawal liability under the MPPAA amounted to $341,283.00, if paid in a lump sum, and $404,361.00, if paid in installments. The notification set forth a schedule of payments in accordance with which the first payment was due on September 1, 1983.

Merchants then sent a letter to the Fund asking that it review its determination of liability, pursuant to 29 U.S.C. § 1399(b)(2)(A), and requesting the Fund to supply them with information relevant to its claim, pursuant to 29 U.S.C. § 1401(e). In January, 1984, in accordance with 29 U.S.C. § 1401(a)(1), Merchants requested that the Fund participate in arbitration of the validity and amount of the Fund's claim.[1] Merchants, however, did not seek

---

1. Merchants sent the Fund three letters. The first two, dated September 28, 1983, and January 6, 1984, requested review and information.

Footnote continued on p. 897.

to compel arbitration, as was their right under the Federal Arbitration Act, 9 U.S.C. § 4, until it filed its counterclaim on January 6, 1988. Ultimately, nearly four and one-half years after Merchants' request, the Fund formally initiated arbitration on May 19, 1988.

To date, Merchants have made no payments to the Fund. In this action, the Fund seeks payment of the delinquent withdrawal liability payments and interest. It also asks for liquidated damages and attorneys' fees under 29 U.S.C. §§ 1451(e) and 1132(g)(2). In addition, the Fund seeks a declaratory judgment to the effect that Merchants' requests for review and arbitration were not in accordance with the MPPAA.

As noted, Merchants, as counterclaimants, initially sought an order compelling the Fund to begin arbitration and in addition an order to make available to Merchants all the requested information. Merchants also seek attorneys' fees and costs.

The pendency of arbitration renders the counterclaim prayer for an order to compel arbitration moot. Instead, Merchants now seek to have *all* remaining issues between the parties submitted to the arbitrator, including the scope of the arbitrable issues and the question whether Merchants must make interim payments.

## III. RIGHT TO INTERIM PAYMENTS

■ Multiemployer pension plans are managed by boards of trustees who, under the MPPAA, unilaterally determine the withdrawal liability of an employer. 29 U.S.C. §§ 1382, 1391, and 1399(b)(1). The MPPAA further provides that an employer may, within ninety days of receiving notice of a withdrawal liability claim, request that the plan conduct an internal review of the claim. 29 U.S.C. § 1399(b)(2)(A).

Merchants contend they have not made interim payments because of the Fund's refusal to respond to their requests for review and information, and "because there is strong reason to believe that the Fund's . . . claim is invalid." The Fund, however,

maintains that interim payments *must* be made by the employer regardless of any challenge to the validity or amount of the claim.

The weight of statutory and judicial authority supports the Fund's position. Interim payments are mandated by the language of the MPPAA. The statute unequivocally requires that

> Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor . . . beginning no later than 60 days after the date of the demand *notwithstanding any request for review or appeal of determinations* of the amount of such liability or of the schedule.

29 U.S.C. § 1399(c)(2) (emphasis supplied).

The cases in this District addressing the question of interim payments have held the statutory language to be an unambiguous mandate. See, e.g., *Debreceni v. George Lamoureux & Co.*, 629 F.Supp. 598, 600–01 (D.Mass.1986) (Caffrey, J.) (notwithstanding employer's request for review, it must begin payment of its withdrawal liability within sixty days); *Debreceni v. Farer Transportation Co.*, No. 86–2622–S, slip op. at 2 (D.Mass. Jan. 8, 1987) (Skinner, J.) (ERISA requires an employer to make scheduled withdrawal payments when due "even if the employer disputes the Fund's determination of withdrawal liability."); *Debreceni v. Barry & Foley Motor Transp., Inc.*, No. 86–2185–S, slip op. at 7 (D.Mass. Nov. 6, 1986) (Skinner, J.) (language of MPPAA is clear; it "unequivocally establishes the Company's duty to make interim payments to the Fund pending resolution of the dispute.").

Moreover, there is considerable support for this position in the law of other Circuits. See, e.g., *Marvin Hayes Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund*, 814 F.2d 297, 299 (6th Cir.1987) ("It is clear that during the pendency of any dispute . . . interim payments of withdrawal liability must be made to the Plan."); *United Retail and Wholesale Employees Teamsters Union Local 115 v. Yahn and McDonnell, Inc.*,

Footnote 1 continued.
The third letter, dated January 26, 1984, request-

ed the Fund to submit to arbitration.

787 F.2d 128, 132–34 (3d Cir.1986), *aff'd* 481 U.S. 735, 107 S.Ct. 2171, 95 L.Ed.2d 692 (1987); *Trustees of Amalgamated Ins. Fund v. Geltman Indus., Inc.,* 784 F.2d 926, 932 (9th Cir.), *cert. denied,* 479 U.S. 822, 107 S.Ct. 90, 93 L.Ed.2d 42 (1986) (interim payments, even during arbitration, will be enforced); *Lads Trucking Co. v. Board of Trustees,* 777 F.2d 1371, 1375 (9th Cir.1985) ("We have enforced the requirement of payment during arbitration.").

Defendants argue, however, that courts confronting a request for an order compelling the payment of interim funds must exercise equitable discretion. In support of this contention, defendants cite *Robbins v. McNicholas Transp. Co.,* 819 F.2d 682 (7th Cir.1987), which held that "a district court has a measure of discretion whether or not to use injunctive power to compel interim payments" in situations in which "there can be unfairness and injury not likely intended by Congress in compelling interim payments while arbitration of the liability is pending." *Id.* at 685. *See also Central States Southeast and Southwest Areas Pension Fund v. T.I.M.E.–DC, Inc.,* 826 F.2d 320, 329–30 (5th Cir.1987) (compelling interim payments is separate question from compelling arbitration; in theory, court has some discretion whether to compel interim payments).[2]

The Seventh Circuit in *McNicholas* acknowledged that "compelled payment of money, recoverable with interest upon later determination of error, is not, in itself, irreparable harm," and it recognized that a "pay now, dispute later" collection procedure was expressly intended by Congress. *McNicholas,* 819 F.2d at 685 (citations omitted). The court determined, however, that despite the explicit requirement that interim payments be made, and the provision that a plaintiff may resort to "the powers of a court," the statute "does not expressly provide that the court must grant an order compelling payment in every instance." *Id.* at 686. The *McNicholas* court held that district courts should exercise the same kind of discretion as that used to decide whether to issue a preliminary injunction, and should consider "the employer's probability of success before the arbitrator, and the gravity of any economic hardship caused by payment of installments while awaiting decision." *Id.* at 685.[3]

■ The majority view, which I adopt, that enforcement of interim payments is a relatively mechanical statutory obligation for the courts, and not the occasion for an extended factual inquiry, suggests at a minimum that *McNicholas* not be read

---

**2.** In addition, at least one Circuit has found an "ambiguity" in the MPPAA regarding the making of interim payments pending review or arbitration. *Republic Industries, Inc. v. Teamsters Joint Council,* 718 F.2d 628, 641–42 & n. 16 (4th Cir.1983), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984). The court stated that "[d]epending upon how the 1980 Act is read, [the employer] may be required to make installment payments as they come due in order to avoid a default, which would have the effect of accelerating its total liability, or it may not be required to pay anything while it exercises its right to review or arbitration." *Id.* The Fourth Circuit did not resolve the issue, however.

The First Circuit has yet to reach the question whether interim payments must be ordered under the MPPAA. To date, that court has reached only the broadest issue, concluding that the MPPAA is constitutional and does not deprive employers of due process. *Keith Fulton & Sons, Inc. v. New England Teamsters,* 762 F.2d 1137 (1st Cir.1985) (en banc). A panel of the First Circuit in the initial *Keith Fulton* opinion hypothesized that it "could resolve th[e] question

[whether installment payments were required to be made pending the outcome of arbitration] by interpreting the law to require the employer to begin paying the fund only *after* the arbitration." *Keith Fulton & Sons, Inc. v. New England Teamsters,* 762 F.2d 1124, 1136 (1st Cir.1984), *rev'd on other grounds,* 762 F.2d 1137 (1985) (en banc) (emphasis in original). The panel declined, however, to give its "opinion as to the proper interpretation of the statute at this time." *Id.*

**3.** Merchants, citing *In re Transport, Inc.,* 4 EBC 2625, 2630–31 (1984), contend that an arbitrator has been held to be competent to decide interim payments issues, and the court should thus submit the question to the arbitrator. This contention, which I adopt in section IV *infra,* is beside the point. While an arbitrator may be competent to hear such issues, district courts should not decline to hear a claim when a litigant has availed itself of its statutorily granted access to the courts, and when the issue is one for which the courts have statutory responsibility. *See I.A.M. Nat'l Pension Fund v. Stockton,* 727 F.2d 1204, 1210 (D.C.Cir.1984).

broadly. As the *McNicholas* court noted, "[o]rdinarily, in the absence of a demonstration that making interim payments would inflict irreparable injury on an employer, a court should enforce the interim payments requirement without examining the merits of the underlying dispute concerning withdrawal liability." 819 F.2d at 686 n. 4. Irreparable harm in this context appears to mean the prospect of dire financial consequences to the employer if forced to make interim payments.[4]

Merchants do not contend that they face such irreparable harm. Rather, Merchants argue that another branch of equitable consideration—the purported failure of the Fund as the party seeking equitable intervention to square its own corners—justifies discretionary refusal to enforce the interim payments schedule. Specifically, Merchants contend that the failure of the Fund to be forthcoming in providing information regarding withdrawal liability calculations is grounds to deny interim payment enforcement.

The MPPAA provides that the employer may request the Fund to conduct an internal review of its claim. 29 U.S.C. § 1399(b)(2)(A) and (b)(2)(B). Such a review has been held, however, not to impose a mandatory requirement on the Fund. *Grand Union Co. v. Food Employers Labor Relations Assoc.*, 808 F.2d 66, 70 & n. 6 (D.C.Cir.1987). In addition, the MPPAA requires the Fund to provide to an employer general information concerning its computation of liability. 29 U.S.C. § 1401(e). To date, the Fund has failed to furnish any information or to conduct plenary review of its claim. The Fund has refused to respond to any of Merchants' requests, and it now contends its failure to respond should be read as a "review" which effectively rejected the employer's challenge to its determinations.

Merchants' request for information from the Fund was made pursuant to § 1401(e), which reads:

If any employer requests in writing that the plan sponsor make available to the employer general information necessary for the employer to compute its withdrawal liability with respect to the plan (other than information which is unique to the employer), the plan sponsor shall furnish the information to the employer without charge. If any employer requests in writing that the plan sponsor make an estimate of such employer's potential withdrawal liability with respect to the plan or to provide information unique to that employer, the plan sponsor may require the employer to pay the reasonable cost of making such estimate or providing such information.

At the hearing, the Fund contended that "employer" means a non-withdrawing employer, and in support of this interpretation it claimed that it routinely provides information upon request to employers who still participate in the plan and who wish simply to calculate their future, or potential, withdrawal liability. Merchants, on the other hand, argued that "any employer" means *any employer* as defined throughout ERISA, and that the pertinent part of this provision does not distinguish between withdrawing and non-withdrawing employers.

I have found no cases which address the right of an employer to information prior to the initiation of arbitration. That the information provision is in the section of the Act entitled "Resolution of disputes," which provides for arbitration and civil enforcement of interim payments and/or of an arbitrator's award, may serve to support the Fund's argument that Merchants' entitlement to information is only triggered by initiating arbitration or a civil action.[5]

**4.** Some courts "have suspended the statutory obligation where the employer would experience serious financial difficulty if forced to provide the Fund with interim payments prior to the resolution of its challenge to the assessment." *Robbins v. Pepsi–Cola Metropolitan Bottling Co.*, 637 F.Supp. 1014, 1020 n. 19 (citing *Victor Construction Co. v. Construction Laborers Pension Trust*, 2 EBC 2467 (C.D.Cal.1982); *Stoe-*

*ven Brothers, Inc. v. The California Butchers' Pension Trust Fund,* No. C–82–0558 (N.D.Cal. Apr. 5, 1982); *Woodward Sand Co. v. Engineers Pension Trust,* 2 EBC 2161 (S.D.Cal.1981)).

**5.** Section 1401(e) is the only provision in the MPPAA allowing an employer to obtain information from the Fund. Section 1399, which establishes the mechanisms for an employer's

Furthermore, this provision only allows an employer to obtain "general information," while discovery would make available to the employer more specific information from the Fund. In fact, 29 C.F.R. § 2641.4(a)(2) provides for full prehearing discovery, including depositions, interrogatories, and requests for production of documents. Merchants' requests for information are too detailed to be characterized as requests for "general information" even if Merchants do fall within the definition of "any employer" in § 1401(e).

In the context of this case, where arbitration is underway with discovery procedures fully competent to satisfy Merchants' information requests, I do not find the purported failures of the Fund to provide information constitute an equitable basis to overcome the statutory directive to enforce the interim payments schedule.

Indeed, given the length of time Merchants waited before initiating the arbitration process where enforceable discovery is available, the claim of failure to provide information smacks of a pretext confected to provide a colorable basis for avoiding interim payment liability.

I am skeptical, in any event, whether an information failure would ever justify a district court in refusing to enforce a claim for interim payments. For present purposes, without accepting the proposition that some equitable considerations might justify a refusal by the court to enforce a claim for interim payments, I find no consideration which might be applicable to be present here.

■ In keeping with the decisions in this District, as well as with substantial authority from other Circuits, I will follow my statutory obligation to order that Merchants now make the interim payments on their withdrawal liability. There being no material facts in genuine dispute regarding

the obligation to make interim payments,[6] summary judgment on Count I of the Complaint will be granted for the plaintiff.

## IV. SCHEDULE OF INTERIM PAYMENTS

A more compelling equitable case can, however, be made for adjusting the schedule of interim payments in order to reflect the belated formal notification of default resulting in proceedings before this court. On this point as well, however, the statute is all but mechanical. 29 U.S.C. § 1399(c)(5) provides that

> In the event of a default, a plan sponsor may require *immediate payment of the outstanding amount* of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made. For purposes of this section, the term "default" means—

> (A) the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure, ...

(emphasis supplied).

■ There is no evidence in the record that the plan sponsor ever provided formal written notification of the default to the defendants. However, even if notification could not be inferred from the ongoing hostilities and corollary negotiations between the parties, the filing of this law suit is sufficient notice of the duty to cure.

■ The defendants have not cured. Rather they have enjoyed the use of the monies for the outstanding liability while the dispute has dragged on. There is no unfairness in ordering them to provide what the statute clearly requires. Merchants shall pay over to the plaintiff the entire outstanding amount of the with-

request for review, requires the employer to furnish information to the plan sponsor but there is no reciprocal requirement that the sponsor provide the employer with information.

**6.** Merchants of course challenge the very validity of the claim. Such a challenge raises genuine factual questions. However, because the statu-

tory mandate is unambiguous, and because Merchants will not suffer irreparable harm, those factual questions will not be addressed in a judicial forum at least until arbitration has been completed, and judicial review is then sought on the merits.

drawal liability, plus accrued interest from September 1, 1983. The parties will be required to submit an agreed form of judgment reflecting the precise amount now due from Merchants.

I recognize that this imposes a substantial burden on defendants, but they have created that burden by their own recalcitrance. To the degree that any mitigation of this duty is necessary or appropriate, it is a matter which can be dealt with by the arbitrator who, as I conclude in this next section, has plenary power to resolve all disputes between the parties—even those having to do with interim payment responsibilities.

## V. SCOPE OF ARBITRATION

The legislation is clear that disputes between the employer and the plan under the MPPAA are to be resolved during arbitration. 29 U.S.C. § 1401(a). Arbitration must be initiated within 60 days after a 120 day period from the date of the employer's request for review under § 1399(b)(2)(A). Merchants' initial request for information and review was by letter dated September 28, 1983, within 90 days of the Fund's notice to Merchants of its claim. Merchants' request for arbitration was timely made by letter dated January 26, 1984, the one hundred and twenty first day after its September letter. For four years, the Fund failed to submit to arbitration, and finally initiated arbitration in May, 1988.

Had the Fund not submitted to arbitration, I would have ordered it to arbitrate the dispute in accordance with the statute. The Fund's submission to arbitration, however, renders this point moot.

The question now before me is the scope of the arbitrable issues. 29 U.S.C. § 1401(a) provides that *"[a]ny dispute* between an employer and the plan sponsor ... shall be resolved through arbitration." (emphasis supplied). Plaintiff argues that defendants failed to raise all the issues they now seek to arbitrate in their initial request to the Fund for review. The plain-

tiff's contention is that an issue must be raised on review before it can be raised in arbitration.

The cases plaintiff has cited in support of its claim that Merchants should be barred from raising issues and defenses in arbitration are inapposite. *Robbins v. Chipman Trucking Inc.*, 693 F.Supp. 628, 639 (N.D. Ill.1986) *aff'd without opinion*, 848 F.2d 196 (7th Cir.1988), held that an employer who failed timely to file an arbitration demand is barred from contesting withdrawal liability in court. Similarly, *I.A.M. Nat'l Pension Fund v. Clinton Engines Corp.*, 825 F.2d 415, 416 (D.C.Cir.1987) held that where the employer was bound initially to resort to arbitration, its failure to do so constituted a waiver at trial of the defenses it should have asserted in arbitration. Although Merchants did not force the Fund to submit to arbitration, an option provided for by the statute, they did timely request arbitration. Whether such a request is sufficient under the cases cited by plaintiff—a proposition I would be inclined to endorse—is rendered immaterial by the Fund's own initiation of arbitration in May, 1988.

Thus the dispute before me does not turn on whether Merchants failed to seek arbitration. The dispute rather turns on whether their alleged failure to raise issues at the *request for review* stage constituted a waiver of the ability to arbitrate those issues.

Plaintiff can point to no cases which support its issue preclusive waiver argument.[7] Instead, it grounds its claim on the spurious comparison that "as an employer must exhaust arbitration before seeking judicial review, so must an employer exhaust the request for review before seeking to arbitrate." In this connection, plaintiff cites a rule promulgated by the Pension Benefit Guaranty Corp. ("PBGC"), the federal agency empowered to implement ERISA. That rule requires that the initiation of arbitration

---

7. For their part, defendants have cited one arbitral decision which ostensibly ruled on the merits of an issue not included in the review re-

quest. *In re Wilson Chevrolet Co.*, 7 EBC 1474, 1483, 1490 (1985). I have not, however, found such an explicit ruling in the referenced case.

include in the notice ... a statement that it disputes the plan sponsor's determination of its withdrawal liability.... A copy of the demand for withdrawal liability and any request for reconsideration, and the response thereto, shall be attached to the notice.

29 C.F.R. § 2641.2(d).

Plaintiff, however, misreads this rule as "*mandat[ing]* that the scope of the employer's request for review determines the scope of the arbitration." The language of the above rule does not expressly suggest, far less compel, this reading.

While there are no cases addressing this aspect of the scope of arbitration, the PBGC itself has stated that "there is nothing to prohibit the employer from raising issues or introducing evidence in the arbitration not previously identified in the request for review." Brief for Appellant at 5, *PBGC v. Yahn & McDonnell, Inc.,* 481 U.S. 735, 107 S.Ct. 2171, 95 L.Ed.2d 692 (1987). "Clearly, however," the PBGC argued to the Supreme Court, "the withdrawal liability arbitration is not an appellate proceeding but a plenary one, where the first record is made, and where the arbitrator may consider facts and issues not previously raised between the parties." *Id.* at 14. Under the PBGC analysis, Merchants should thus be allowed to raise in arbitration all issues truly in dispute between the parties at the time of arbitration.

In any event, plaintiff has pointed to no authority to suggest that the arbitrator should not be allowed to define the scope of arbitration. Indeed, the duty to arbitrate is statutory, and the matters to be arbitrated are defined not by the parties, but by the statute.[8] "As we have seen, the statute states unambiguously that '*[a]ny* dispute' ... shall be resolved through arbitration' (29 U.S.C. § 1401(a)(1)), and Congress

clearly intended exactly what those words import." *Teamsters Pension Trust Fund v. Allyn Transp. Co.,* 832 F.2d 502, 505–06 (9th Cir.1987) (emphasis in original). It is within the purview of the arbitrator to consider the scope of the dispute submitted to him, and the court should defer to that determination until judicial review is appropriate. In this connection, should interim payments still be in dispute it appears clear to me that the arbitration should be free to determine those issues as well, leading perhaps to a modification of this court's order as to interim payment obligations entered herein.

## VI. ATTORNEYS' FEES AND COSTS

The relevant statutory scheme makes attorneys' fees and costs available on both discretionary and mandatory bases.

29 U.S.C. § 1451 provides for a discretionary award by the court of costs and expenses, including attorneys' fees, to the prevailing party in a civil action brought pursuant to the MPPAA.

29 U.S.C. § 1132(g), in contrast, provides for both discretionary and mandatory attorneys' fees and costs. Section 1132(g)(1) reads:

In any action under this title (other than an action described in paragraph 2) by a participant, beneficiary, or fiduciary, the court *in its discretion may* allow a reasonable attorney's fee and costs of action to either party.

(emphasis supplied).

Paragraph (2) reads:

In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 [29 USC § 1145] in which a judgment in favor of the plan is awarded, the court shall award the plan—

(A) the unpaid contributions,

---

**8.** At the hearing on these motions, plaintiff's counsel pointed to the *Steelworkers Trilogy* and its progeny for the proposition that it is the role of the courts to define the arbitrator's jurisdiction. *See United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403, *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; *United Steelworkers v. Enter-* *prise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The *Steelworkers Trilogy* is inapplicable, however, because those cases were concerned with the scope of the arbitrator's power under a collective bargaining agreement between the parties and not under a statutory requirement that the parties arbitrate all disputes.

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent ... of the amount determined by the court in subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

 Plaintiff seeks an award under both provisions. The factors to be considered in a discretionary award of fees and costs are: (1) culpability or bad faith on the part of the losing party; (2) that party's ability to satisfy a fee award; (3) the deterrent effect of such an award; (4) the value of the victory to plan participants and beneficiaries and the significance of the legal issue involved; and (5) the relative merits of the parties' positions. *Grand Union Co.*, 808 F.2d at 72 (citation omitted). The Fund's failure to conduct a meaningful review of its determination, its neglect to provide Merchants with any information, and its avoidance of agreement to submit to arbitration in a timely fashion, weigh heavily against a discretionary award. Accordingly, I will not make such an award.

 Moreover, plaintiff is not entitled to a mandatory award under § 1132(g)(2). Plaintiff's action was not brought pursuant to § 1145, which provides that an employer who fails to make *contributions* in accordance with the plan is delinquent. Nonetheless, plaintiff argues that a default under § 1401(d) is equivalent to a failure to make contributions under § 1145, and that failure to make interim payments is a default. Section 1401(d) requires that interim payments be made by the employer until a final decision by an arbitrator. It then states: "If the employer fails to make timely payment in accordance with such *final* decision, the employer shall be treated as being delinquent in the making of a contribution required under the plan (within the meaning of section 515) [29 U.S.C. § 1145]." 29 U.S.C. § 1401(d) (emphasis supplied).

That provision does not mandate attorneys' fees here. It "apparently contemplates that it is the failure to render payments upon that *final decision* [i.e. of the arbitrator] which constitutes default" within the meaning of § 1145, and which triggers mandatory attorneys' fees. *Republic Industries v. Teamsters*, 718 F.2d at 641 n. 16 (emphasis supplied).[9] That point has not yet been reached in this dispute. The arbitrator has yet to make a final decision in this case.

Because I conclude that Merchants' failure to make interim payments does not constitute a delinquency within the meaning of § 1145, I decline to make a mandatory award of attorneys' fees and costs to the plaintiff.

## VII. CONCLUSION

For the foregoing reasons,

1) the Fund's motion for summary judgment is hereby GRANTED on Count I of the Complaint, and Merchants will be ordered to make the appropriate lump sum interim payment; in this connection the parties shall submit to the clerk on or before 12 noon Thursday, March 9, 1989, an agreed form of judgment reflecting this sum. Summary judgment on Count II, the prayer for a declaratory judgment on the scope of arbitration, is hereby DENIED.

2) Merchants' motion for summary judgment referring all issues to arbitration—including scope of arbitration and revision of the interim payments—is hereby GRANTED;

3) all other motions including plaintiff's motion for summary judgment as to limitation on the scope of the arbitrable issues

---

**9.** The court in *Republic Industries* was analyzing § 1401(d) in the context of whether a court should enforce installment payments pending the outcome of arbitration, and not in relation to attorneys' fees and liquidated damages. *See supra*, n. 2.

and both parties' motions for fees and costs are hereby DENIED.

Judgment to enter accordingly.