**J.J. TAYLOR COMPANIES, INC., Plaintiff,**

**v.**

**NEW ENGLAND TEAMSTERS AND TRUCKING INDUSTRY PENSION FUND, Defendant.**

**Civ. A. No. 91–11875–PBS.**

United States District Court, D. Massachusetts.

May 16, 1994.

**74**

Stephen E. Neil, Goodwin, Proctor & Hoar, Boston MA, for plaintiff.

Randall Nash, Grady & Dwyer, Boston MA, for defendant.

### MEMORANDUM OF DECISION AND ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

SARIS, District Judge.

This case, arising under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1381 et seq. ("MPPAA"), concerns the time limits within which an employer may initiate arbitration over its assessed withdrawal liability. Pursuant to 29 U.S.C. § 1401(b)(2), the plaintiff, J.J. Taylor Companies, Inc. ("J.J. Taylor"), seeks to vacate or modify an arbitrator's decision that its attempt to initiate arbitration proceedings against the defendant, the New England Teamsters and Trucking Industry Pension Fund ("The Pension Fund"), was untimely under the provisions of 29 U.S.C. § 1401(a)(1). The matter is now before this court on the parties' cross-motions for summary judgment. For the reasons set forth below, the plaintiff's motion is **DENIED** and the defendant's motion is **ALLOWED.**

### BACKGROUND

The parties have no genuine dispute concerning the following material facts:

The Pension Fund is a "multiemployer pension plan" within the meaning of 29 U.S.C. § 1301(a)(3). J.J. Taylor is a Massachusetts corporation and an employer that once had an obligation to contribute to the Fund. On June 9, 1989, the Pension Fund notified J.J. Taylor that it had effected a withdrawal from the Fund, and was subject to withdrawal liability in the amount of $368,-647, as of September 30, 1987. The letter also advised J.J. Taylor that pursuant to 29 U.S.C. § 1399(b)(2)(A) it had 90 days to ask for a review of the determination of withdrawal liability.

On June 28, 1989, W.C. Thomas, the Chief Operating Officer of the plaintiff's labor relations consultant, West Coast Industrial Relations Association, Inc. ("WCIRA"), sent a letter to the Fund titled "Employer's Request For Review On Withdrawal Liability." Thomas wrote that "[t]he purpose of this is to serve with the applicable writ of rules and is a request to review the underlying assumptions and the amount of withdrawal liability which has been assessed against my client." The letter raised questions concerning the amount of pension credit allocated to

the employees, and a $100,000 discrepancy in the calculation of withdrawal liability between January, 1988 and April, 1988, when the employer "effectively withdrew from the Plan." On July 12, 1989, counsel for the Pension Fund wrote back to WCIRA, responded to J.J. Taylor's questions, and denied the request for review.

About two weeks later, on July 25, Mr. Thomas of WCIRA wrote a second letter to the Fund, requesting copies of the Evaluation Reports for the Trust Fund for the fiscal years ending September 30, 1987 and September 30, 1988. Thomas also wrote that neither this letter nor the June 28 letter should be construed as a waiver of other claims J.J. Taylor might raise in any subsequent arbitration concerning withdrawal liability. On August 7, the Pension Fund's counsel sent a letter to WCIRA refusing to respond to the July 25 request, because it did not raise any specific matters for review, and the plaintiff had already made a request for review that had been answered and denied in the July 12 correspondence.

On September 7, 1989, J.J. Taylor, through its counsel, sent the Pension Fund a letter that it identified as J.J. Taylor's "request for review." The letter alleged several inaccuracies in the Fund's determination of withdrawal liability. The plaintiff's primary assertion in the September 7 letter was that it withdrew from the Fund not in the fiscal year ending September 30, 1988, as the Fund contended, but in the fiscal year ending September 30, 1989. In a letter dated September 15, the Pension Fund responded that J.J. Taylor, through its representative WCIRA, had already made its request for review, and was not entitled to a second request. Accordingly, the Fund refused to respond to the new questions concerning its calculation of withdrawal liability.

On February 16, 1990, J.J. Taylor notified the Pension Fund of its intention to initiate arbitration over the Fund's calculation of withdrawal liability. The Pension Fund refused to submit to arbitration on the ground that the plaintiff's request for arbitration was untimely. J.J. Taylor responded by filing a complaint in the United States District Court seeking to compel arbitration. The parties ultimately agreed to dismiss that action, without prejudice, and instead submit to arbitration the threshold procedural issue of whether J.J. Taylor's initiation of arbitration was timely.

On June 14, 1991, the Arbitrator, Paul J. McTague, issued a 23 page opinion concluding that the plaintiff had failed to initiate arbitration within the time limits set forth in ERISA and the MPPAA. On July 15, pursuant to 29 U.S.C. §§ 1401(b)(2) and 1451(a), J.J. Taylor commenced the present action to vacate or modify the arbitrator's decision.

## DISCUSSION

■ A motion for summary judgment must be granted if:

[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair,* 902 F.2d 140, 143 (1st Cir.1990). If this is accomplished, the burden then "shifts to the nonmoving party to establish the existence of an issue of fact that could affect the outcome of the litigation and from which a reasonable jury could find for the [nonmoving party]." *Id.* (citations omitted). The nonmovant cannot simply rest upon mere allegations. *Id.* Instead, the nonmoving party must adduce specific, provable facts which establish that there is a triable issue. *Id.* "There must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)).

1. *Statute of Limitations*

■ The central issue in this case is whether, under 29 U.S.C. §§ 1399(b)(2) and 1401(a)(1), an employer's second request for review of the plan sponsor's assessment of withdrawal liability, after its first request has

been denied, triggers the statutory time period for initiating arbitration. The arbitrator concluded that it did not. The arbitrator's conclusions of law are subject to *de novo* review by this court. *Malden Mills Indus., Inc. v. ILGWA Nat'l Retirement Fund,* 766 F.Supp. 1202, 1208 (D.Mass.1991); *Robbins v. Chipman Trucking, Inc.,* 866 F.2d 899, 901 (7th Cir.1988) (the issue of timeliness is for the court, rather than the arbitrator).

The review begins with an overview of the relevant statutes. Section 1399(b)(2)(A) provides:

> No later than 90 days after the employer receives [notice of its withdrawal liability], the employer—(i) may ask the plan sponsor to review any specific matter relating to the determination of the employer's liability and the schedule of payments, (ii) may identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer, and (iii) may furnish any additional relevant information to the plan sponsor.

The plan sponsor is expected to respond to the employer's request in accordance with § 1399(b)(2)(B), which provides as follows:

> After a reasonable review of any matter raised, the plan sponsor shall notify the employer of—(i) the plan sponsor's decision, (ii) the basis for the decision, and (iii) the reason for any change in the determination of the employer's liability or schedule of liability payments.

If the employer and plan sponsor are unable to reach agreement on the calculation of withdrawal liability, the MPPAA establishes a mechanism for resolving disputes. Section 1401(a)(1) provides, in pertinent part:

> Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration. Either party may initiate the arbitration proceeding within a 60–day period after the earlier of—(A) the date of notification to the employer under section 1399(b)(2)(B) of this title, or (B) 120 days after the date of the employer's request under section 1399(b)(2)(A) of this title.

■ Putting these sections together, the result is that an employer must file for arbitration within 60 days after the plan sponsor responds to its request for review, or, if earlier, within a 60 day period that commences 120 days after the request for review. The brief period given to the parties to initiate arbitration evidences Congress's intent to avoid the delay and expense of more formal proceedings and "to bring about expeditious resolution of such disputes...." *I.A.M. Nat'l Pension Fund v. Clinton Engines Corp.,* 825 F.2d 415, 426 (D.C.Cir.1987).

In this case, there appears to be no dispute that WCIRA's letter of June 28, 1989 constituted a request for review, and the Fund's letter of July 12, 1989 constituted a response. Accordingly, the defendants contend, J.J. Taylor was obligated to initiate arbitration within 60 days of July 12, 1989. The plaintiff, however, contends that its letter of September 7, 1989, was also a valid request for review, filed within the 90 day period established in § 1399(b)(2)(A). As there was never a proper response to that request, the plaintiff argues its initiation of arbitration on February 16, 1990 was timely, because it fell between 120 and 180 days after the September 7, 1989 letter.

The plaintiff's primary argument is that "[n]othing in the language of 29 U.S.C. § 1399(b)(2)(A) limits an employer to only one Request for Review or requires the employer to identify all of the inaccuracies in the plan's determinations in a single communication with the plan." At oral argument and in its brief the plaintiff placed particular reliance on two cases. In *New York State Teamsters Conference Pension & Retirement Fund v. McNicholas Transp. Co.,* 658 F.Supp. 1469 (N.D.N.Y.1987) ("*McNicholas*"), *aff'd,* 848 F.2d 20 (2nd Cir.1988), the employer made two requests for review within the 90 day period, with each request followed by a response. 658 F.Supp. at 1471–72. In concluding that the employer's demand for arbitration was untimely, the court applied the 60 day time limit to the fund's second response. *Id.* Similarly, in *Robbins,* 866 F.2d at 901, the court went through the exercise of applying the applicable time lim-

its of § 1401(a)(1)(B) to each of two requests for review made by the employer.

As an initial matter, this court is not persuaded that these cases stand for the proposition that employers are entitled to make multiple requests for review. In neither *McNicholas* nor *Robbins* was the court forced to explicitly decide whether multiple requests are permissible, or, if so, which request or response triggered the applicable statute of limitations. Unlike in the present dispute, in both those cases the requests for arbitration were untimely whether measured from the fund's first or second response, as in *McNicholas,* or the employer's first or second request for review, as in *Robbins.*

■ Additionally, the absence of specific language prohibiting more than one request does not translate into an affirmative right to make multiple requests, particularly when not based on newly discovered information.[1] If anything, the statutory language in § 1401(a)(1), concerning "the date of notification to the employer" and "the date of the employer's request" seems to envision only one request and response. While the plaintiff suggests it should not have to identify all inaccuracies in one request, it bears emphasizing that the employer's failure to raise particular issues in his request for review does not bar his raising them at arbitration. *Debreceni v. Merchants Terminal Corp.,* 740 F.Supp. 894, 901–02 (D.Mass.), *aff'd,* 889 F.2d 1 (1st Cir.1989); 29 U.S.C. § 1401(a)(1) ("[a]ny dispute between an employer and the plan sponsor ... shall be resolved through arbitration.").

■ Moreover, regardless of the permissibility of multiple requests, this court concludes that even where multiple requests and responses are filed within the 90 days after the receipt of withdrawal liability, the 60 day limitation under § 1401(a)(1)(A) is triggered by the first response. *See Assonet Sand & Gravel Corp. and N.E. Teamsters & Trucking Indus. Pension Fund,* 13 Employee Benefits Cas. (BNA) 2318, 2324–25 (March 22, 1991) (although distinguishable in that sec-

ond request for review came more than 90 days after notification of withdrawal liability, arbitrator concludes that "[t]he Company cannot extend the time limits contained in [§ 1401(a)(1) ] for initiating arbitration by submitting additional requests and/or information for review ... *There is no provision in the statute that allows the Company, or the Fund, to stop the clock once it has begun under [§ 1401(a)(1) ].*") (emphasis added). This conclusion is supported by the policy in favor of expeditious resolution of disputes, the plain language of the statute, and the employer's right to raise any issue in the arbitration regardless of whether it is in the request for review.

■ In the present case, a plain reading of §§ 1401(a)(1)(A) and 1399(b)(2)(B) compels the straightforward conclusion that the Pension Fund's response of July 12 triggered the start of the 60 day period for initiating an arbitration proceeding. Under the plaintiff's theory, that 60 day period would be eviscerated and a new time limit established every time an employer submitted another request for review within 90 days of the original notification of withdrawal liability. If Congress desired a system whereby the employer could pepper the pension fund with multiple requests throughout the 90 day period following notification of withdrawal liability, a more reasonable approach to establishing a limitation period would have been to simply attach the 60 day time limit to the end of the 90 day request period.

## 2. *Attorneys fees*

■ The Pension Fund has moved for costs and attorney's fees pursuant to 29 U.S.C. § 1451(e). This request is denied. Section 1451(e) provides that "[i]n any action under this section, the court may award all or a portion of the costs and expenses incurred in connection with such action, including reasonable attorney's fees, to the prevailing party." In considering whether an award is appropriate, the court generally focuses on five factors:

"1. the degree of bad faith or culpability of the losing party;

---

**1.** This court does not address the situation where the Pension Fund's response contains new information which the employer did not know or reasonably could not have discovered prior to its

initial request, or where the Pension Fund's response raises issues of waiver or equitable estoppel.

2. the ability of such party to personally satisfy an award of fees;

3. whether such award would deter other persons acting under similar circumstances;

4. the amount of benefit to the action as conferred on the members of the pension plan; and

5. the relative merits of the parties' positions."

*Malden Mills Indus., Inc. v. ILGWU Nat'l Retirement Fund,* 780 F.Supp. 68, 72 (D.Mass.1991); *see also Gray v. New England Tel. & Tel. Co.,* 792 F.2d 251, 257–58 (1st Cir.1986). Applying these standards, an award of costs is unwarranted. There is no evidence of bad faith on the part of J.J. Taylor, and although unsuccessful on the merits, it has adopted a colorable legal position in what appears to be a case of first impression.

### ORDER

For the foregoing reasons, it is hereby **ORDERED** that plaintiff's motion for summary judgment be **DENIED** and defendant's motion for summary judgment be **ALLOWED.** The defendant's request for attorney's fees and costs is **DENIED.**