**NEW YORK STATE TEAMSTERS CONFERENCE PENSION & RETIREMENT FUND, by its trustees, T. Edward NOLAN, Curtis Gundersen, Richard Muller, Rocco F. DePerno, Paul E. Bush, and Jack Canzoneri, in their representative capacities, Plaintiff,**

v.

**ST. LAWRENCE TRANSIT MIX CORPORATION, Defendant.**

No. 84–CV–1318.

United States District Court, N.D. New York.

July 3, 1985.

---

**9.** Wright, *Federal Practice and Procedure,* Criminal 2d, Vol. 3A, p. 137.

Maloney & Kelly, New York City, N.Y., for plaintiff; Martin Coffey, of Counsel.

Bryant O'Dell & Basso, Syracuse, N.Y., for defendant; Zachary L. Karmen, of Counsel.

## MEMORANDUM–DECISION AND ORDER .

McCURN, District Judge.

Presently before the court are (1) defendant's motion to stay this action and to compel arbitration and (2) plaintiff's cross motion for summary judgment or, in the alternative, for an order compelling defendant to pay its past due withdrawal liability payments and to begin making its current liability payments. For the reasons discussed below, the court denies defendant's motion and grants plaintiff summary judgment.

## BACKGROUND

This is an action under the Multiemployer Pension Plan Amendments Act (MPPAA) amending the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* Plaintiff the New York State Teamsters Conference Pension and Retirement Fund (Fund) is the sponsor of an employee benefit and multiemployer pension plan. Under the plan employers contribute to the pension fund on behalf of their employees pursuant to collective bargaining agreements with local Teamsters' unions.

Defendant St. Lawrence Transit Mix Corp. made contributions to the Fund until March 1983 when the company was purchased by Torrington Industries, now Heritage Homes, Inc. On February 6, 1984, plaintiff notified defendant of its withdrawal liability pursuant to the MPPAA. According to the Fund, defendant owes $35,-296.00 which was to be paid in $2,480.32 monthly installments. Defendant's attorney requested the Fund's calculations, which the Fund provided. No withdrawal liability payments have been made, and defendant neither requested the Fund to review defendant's liability nor demanded arbitration. By letter dated May 2, 1984, the Fund notified defendant that it was in default; its entire liability was due; and the Fund was commencing this action to recover defendant's withdrawal liability payments. Plaintiff filed the present complaint on September 20, 1984.

Defendant now moves to stay the present action and to compel arbitration under 29 U.S.C. § 1401(a). St. Lawrence Transit Mix Corp. contends that arbitration of its withdrawal liability is mandatory under the statute. However, it refuses to arbitrate before the New York State Joint Grievance Board, which is the arbitrator that the Fund uses. According to defendant, the New York State Joint Grievance Board is biased because its members are employers that are required to contribute to multiemployer funds and union representatives. Defendant seeks arbitration of its withdrawal liability under the Multiemployer Pension Plan Arbitration Rules issued by the International Foundation of Employee Benefit Plans and the American Arbitration Association.

Plaintiff cross moves for summary judgment. The Fund argues that defendant never requested arbitration and the time to do so has run. Therefore, defendant's withdrawal liability has become fixed, and defendant has waived the affirmative defense it asserts under the MPPAA's "Sale of Assets" provision, 29 U.S.C. § 1384. According to plaintiff, no questions of fact are in dispute, and it is entitled to summary judgment against defendant for $35,296.00, interest, liquidated damages, costs, and attorney fees. In the alternative, plaintiff requests an order compelling defendant to pay its past due liability payments and to commence making its current monthly payments.

## DISCUSSION

ERISA requires an employer that withdraws from a multiemployer pension plan to pay a portion of the plan's unfunded, accrued liability. 29 U.S.C. § 1381. The pension plan sponsor calculates the amount of the employer's withdrawal liability in the first instance. 29 U.S.C. § 1382.

29 U.S.C. § 1401 provides that "(a)ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 4201 through 4219 (including withdrawal

liability and "Sale of Assets") shall be resolved through arbitration." Section 1401 further provides that either party "may initiate" arbitration within 60 days after the earlier of (A) the date that the Fund notifies the employer of the Fund's final determination or (B) 120 days after the employer has requested the Fund to review the employer's withdrawal liability. 29 U.S.C. § 1401(a)(1)(A), (B).[1]

In the present case defendant never asked the Fund to review its determination of defendant's withdrawal liability or demanded arbitration. The time in which defendant could initiate arbitration has long since run. At the very least, defendant should have notified plaintiff that it intended to arbitrate its liability. If defendant did not wish to use the arbitrator that plaintiff wanted, defendant should have sought the court's assistance.

■ 29 U.S.C. § 1401(b)(1) provides:

*Alternative collection proceedings; civil action subsequent to arbitration award; conduct of arbitration proceedings.* (1) If no arbitration proceeding has been initiated pursuant to subsection (a), the amounts demanded by the plan sponsor under section 4219(b)(1) [29 U.S.C. § 1399(b)(1)] shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection.

By failing to timely request arbitration, defendant's withdrawal liability assessed by the Fund has become fixed. *See T.I.M. E.–DC Inc. v. Management-Labor Welfare & Pension Funds,* 756 F.2d 939, 944–45 (2d Cir.1985) (holding that "if an employer disputes the *amount* of its withdrawal liability, then it must proceed to arbitration.");

*Sova Outerwear Corp. v. Trustees of the Amalgamated Cotton Garment and Allied Industries Fund,* 578 F.Supp. 1126, 1127 (S.D.N.Y.1984) (stating, "Furthermore, because Sova has not objected to the amount of the assessment, or requested arbitration within the prescribed period, *see* 29 U.S.C. § 1399(b)(2)(A) (within 90 days of trustees' demand), the amount of liability becomes fixed."). Because factual questions under 29 U.S.C. § 1384 are also subject to arbitration, the defendant here has waived any defense it may have had under the "Sale of Assets" provision. 29 U.S.C. § 1401(a)(1); *Trustees of Western Teamsters Pension Fund v. Arizona-Pacific Tank Lines,* 4 E.B.C. 2355 (N.D.Cal.1983). Therefore, no material issues of fact exist in the present action.

Defendant, however, seeks to negate its failure to timely seek arbitration and the concomitant fixing of its liability by challenging the constitutionality and statutory construction of 29 U.S.C. §§ 1401 and 1384. The Second Circuit has held that questions of statutory construction and constitutionality are not subject to mandatory arbitration under the MPPAA but are issues which the court should decide. *T.I.M.E.– DC, Inc.,* 756 F.2d at 945.

Defendant challenges the constitutionality of the presumptions established in 29 U.S.C. § 1401(a)(3). Section 1401(a)(3) provides:

(A) For purposes of any proceeding under this section, any determination made by a plan sponsor under sections 4201 through 4219 and section 4225 [29 U.S.C. §§ 1381–1399 and 1405] is presumed correct unless the party contesting the determination shows by a preponderance of the evidence that the determination was unreasonable or clearly erroneous.

---

**1.** 29 U.S.C. § 1401(a)(1) provides:

(a) *Arbitration proceedings; matters subject to arbitration, procedures applicable, etc.* (1) Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 4201 through 4219 [29 USC §§ 1381–1399] shall be resolved through arbitration. Either party may initiate the arbitration proceeding within a 60-day period after the earlier of—

(A) the date of notification to the employer under section 4219(b)(2)(B) [29 USC § 1399(b)(2)(B)], or

(B) 120 days after the date of the employer's request under section 4219(b)(2)(A) [29 USC § 1399(b)(2)(A)].

The parties may jointly initiate arbitration within the 180-day period after the date of the plan sponsor's demand under section 4219(b)(1) [29 USC § 1399(b)(1)].

(B) In the case of the determination of a plan's unfunded vested benefits for a plan year, the determination is presumed correct unless a party contesting the determination shows by a preponderance of evidence that—

(i) the actuarial assumptions and methods used in the determination were, in the aggregate, unreasonable (taking into account the experience of the plan and reasonable expectations), or

(ii) the plan's actuary made a significant error in applying the actuarial assumptions or methods.

Defendant contends that the presumption that the Fund's withdrawal liability determination is correct and can only be overcome if the employer can show by a preponderance of the evidence that the Fund's calculation is wrong, violates defendant's due process rights.

■ The Second Circuit in *Textile Workers Pension Fund v. Standard Dye & Finishing Co.*, 725 F.2d 843, 855–56 (2d Cir.1984), expressly rejected plaintiff's constitutional argument. Finding that the presumptions in section 1401 do not violate due process, the Second Circuit stated:

> Under these circumstances, we perceive no unfairness in Congress' decision to place the initial determination of withdrawal liability on the trustees and to provide that the Fund's determination is presumptively correct. *See Republic [Industries, Inc. v. Teamsters Joint Council] supra,* 718 F.2d [628] at 640–41 [D.Va.1983]. Further, since section 1401(b)(2) provides that either party may come to the district court to enforce, vacate or modify an arbitrator's award, Sibley is not denied meaningful access to the courts. *See Republic, supra,* 718 F.2d at 641–42.

*Id.* at 856. Accordingly, plaintiff's constitutional challenge to section 1401 is without merit. *See generally Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* —— U.S. ——, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984) (holding retroactive application of MPPAA withdrawal liability provisions constitutional).

■ Plaintiff also argues that it was not required to timely seek arbitration because the Pension Benefit Guaranty Corporation's (PBGC) arbitration regulations have not been adopted. 29 U.S.C. § 1401(a)(2) provides, "An arbitration proceeding under this section shall be conducted in accordance with fair and equitable procedures to be promulgated by the (Pension Benefit Guaranty) corporation." The corporation has promulgated its regulations, but they have not yet been adopted. The absence of official regulations, however, does not negate defendant's obligation to timely demand arbitration under section 1401 if it wished to challenge the amount of its withdrawal liability. *See T.I.M.E.-DC, Inc.,* 756 F.2d at 945; *Sova Outerwear Corp.,* 578 F.Supp. at 1127; Pension Benefit Guaranty Corp. Op. Letter No. 82–24 (1982) (stating that in absence of PBGC guidelines, arbitration of withdrawal liability may be conducted under any reasonable procedures the parties may select). As noted above, plaintiff should have timely invoked arbitration and then sought the court's assistance if the parties could not agree on the arbitration procedures.

Finally, defendant disagrees with the Fund's interpretation of the "Sale of Assets" provision, 29 U.S.C. § 1384. St. Lawrence Transit Mix Corp. argues that it does not have to pay plaintiff its withdrawal liability because defendant falls within the exemption created by section 1384.

29 U.S.C. § 1384(a) provides:

*Sale of Assets*

*(a) Complete or partial withdrawal not occurring as a result of sale and subsequent cessation of covered operations or cessation of obligation to contribute to covered operations; continuation of liability of seller.* (1) A complete or partial withdrawal of an employer (hereinafter in this section referred to as the "seller") under this section does not occur solely because, as a result of a bona fide, arm's-length sale of assets to an unrelated party (hereinafter in this section referred to as the "purchaser"), the seller ceases covered operations or ceas-

es to have an obligation to contribute for such operations, if—

(A) the purchaser has an obligation to contribute to the plan with respect to the operations for substantially the same number of contribution base units for which the seller had an obligation to contribute to the plan;

(B) the purchaser provides to the plan for a period of 5 plan years commencing with the first plan year beginning after the sale of assets, a bond issued by a corporate surety company that is an acceptable surety for purposes of section 412 of this Act [29 USC § 1112], or an amount held in escrow by a bank or similar financial institution satisfactory to the plan, in an amount equal to the greater of—

(i) the average annual contribution required to be made by the seller with respect to the operations under the plan for the 3 plan years preceding the plan year in which the sale of the employer's assets occurs, or

(ii) the annual contribution that the seller was required to make with respect to the operations under the plan for the last plan year before the plan year in which the sale of the assets occurs,

which bond or escrow shall be paid to the plan if the purchaser withdraws from the plan, or fails to make a contribution to the plan when due, at any time during the first 5 plan years beginning after the sale; and

(C) the contract for sale provides that, if the purchaser withdraws in a complete withdrawal, or a partial withdrawal with respect to operations, during such first 5 plan years, the seller is secondarily liable for any withdrawal liability it would have had to the plan with respect to the operations (but for this section) if the liability of the purchaser with respect to the plan is not paid.

(2) If the purchaser—

(A) withdraws before the last day of the fifth plan year beginning after the sale, and

(B) fails to make any withdrawal liability payment when due, then the seller shall pay to the plan an amount equal to the payment that would have been due from the seller but for this section.

(3) (A) If all, or substantially all, of the seller's assets are distributed, or if the seller is liquidated before the end of the 5 plan year period described in paragraph (1)(C); then the seller shall provide a bond or amount in escrow equal to the present value of the withdrawal liability the seller would have had but for this subsection.

(B) If only a portion of the seller's assets are distributed during such period, then a bond or escrow shall be required, in accordance with regulations prescribed by the corporation, in a manner consistent with subparagraph (A).

(4) The liability of the party furnishing a bond or escrow under the subsection shall be reduced, upon payment of the bond or escrow to the plan, by the amount thereof.

The Fund contends that 29 U.S.C. § 1384(a)(1)(B) requires the purchaser to post a bond before the seller can fall within the "Sale of Assets" provision. Defendant states that it is willing to post a bond and argues that the seller may provide a bond, instead of the purchaser, pursuant to section 1384(a)(3)(A). In the present action, the purchaser of defendant's company has not posted a bond, but defendant claims that the purchaser is contributing to the Fund for defendant's former employees. Defendant also argues that if it is required to pay the withdrawal liability and the purchaser is also paying the Fund, plaintiff will get a double recovery. No case law has been cited to support this position. The court must therefore look to the plain language of the statute and the legislative history in construing section 1384.

■ The MPPAA, amending ERISA, was enacted to protect multiemployer pension funds and the PBGC from employers withdrawing and leaving the funds without the financial resources to provide benefits to covered employees. H.R.Rep. No. 96–

869, Part I, 96th Cong., 2d Sess. 65, 67 (1980); H.R.Rep. No. 96–869, Part II, 96th Cong., 2d Sess. 4 (1980), U.S.Code Cong. & Admin.News 1980, p. 2918; *T.I.M.E.–DC, Inc.*, 756 F.2d at 943–44. As discussed above, the MPPAA requires an employer that withdraws to pay its share of the plan sponsor's liability. The statute was enacted as a strict liability measure. Section 1384 is an exception to the requirement that the employer must begin paying its withdrawal liability immediately. The exception applies where the employer sells its assets to an unrelated party in an arm's-length sale. If the conditions of subsection (a) are met, primary liability is shifted to the purchaser and the seller becomes secondarily liable. 29 U.S.C. § 1384(a).

■ Turning to the provisions of section 1384(a), subsection (1) allows the purchaser to assume primary liability only if the three conditions specified in section 1384(a)(1)(A), (B), and (C) are met. These conditions include the purchaser's posting a bond and the sale contract's specifying that the seller will be secondarily liable if the purchaser defaults. 29 U.S.C. § 1384(a)(1)(B), (C). In the present action, conditions (B) and (C) have not been met. Whether condition (A) is satisfied is also unclear. Subsection (2) establishes the seller's secondary liability. Subsection (3) is designed to further protect the plan sponsor. This subsection provides that a seller who liquidates substantially all of its assets within the five year period must provide a bond to protect the seller's secondary liability. 29 U.S.C. § 1384(a)(3)(A). The language and structure of section 1384 indicate that the employer cannot use section 1384 as an exemption unless the three conditions of section 1384(a)(1) are met first. Therefore, the purchaser must supply the bond to shift primary liability from the seller.

■ Although the court notes the possibility of a double recovery, the MPPAA was enacted to protect the Fund. In light of the policy behind ERISA, as amended by

the MPPAA, exemptions to a withdrawing employer's liability should be narrowly construed. Defendant may not circumvent the requirements of section 1384(a)(1)(B) by posting a bond under section 1384(a)(3). *See generally Trustees of Western Teamsters Pension Fund v. Arizona-Pacific Tank Lines,* 4 E.B.C. 2355.

Because defendant's constitutional and statutory construction arguments must be rejected and defendant's failure to timely initiate arbitration has fixed the amount of defendant's withdrawal liability, no questions of material fact remain. Plaintiff is therefore entitled to summary judgment.

Accordingly, it is hereby

ORDERED, that

1. Defendant's motion is denied.

2. Plaintiff's motion for summary judgment is granted.[2]

---

**2.** Plaintiff shall submit within thirty (30) days a proposed judgment upon ten (10) days notice to

the defendant.