BRENTWOOD FINANCIAL CORPORATION (formerly Auto Warehousing Co.), Plaintiff–Appellant,

v.

WESTERN CONFERENCE OF TEAMSTERS PENSION TRUST FUND, Defendant-third-party-plaintiff-Appellee,

v.

TRANSCO CORPORATION, Third-party-defendant.

No. 89–35221.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 8, 1990.

Decided May 11, 1990.

---

James F. McAteer, Schwabe, Williamson & Wyatt, Seattle, Wash., for plaintiff-appellant.

James D. Oswald and Russell J. Reid, Davies, Roberts & Reid, Seattle, Wash., for defendant-third-party-plaintiff-appellee.

Nancy S. Heermans, Pension Benefit Guar. Corp., Washington, D.C., for amicus curiae.

Before WRIGHT, REINHARDT and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We are asked to decide whether an employer withdrawing from a multi-employer pension plan was subject to "withdrawal liability" after it sold its assets and transferred its obligations to the purchasing entity.

## I

The Multi–Employer Pension Plan Amendments Act, 29 U.S.C. §§ 1381–1461 (the "Act"), was passed in 1980 to resolve a number of the funding problems associated with multi-employer pension plans. One of the problems was the diminution of contributions to plan trust funds when employers withdrew from participation. Before the Act, employer withdrawals from industry plans frequently had adverse effects upon not only the plans themselves, but also the participants, beneficiaries, and labor-management relations in general. *See* 29 U.S.C. § 1001(a).

To relieve the funding burden brought on by employer withdrawals, Congress granted multi-employer pension plans the ability to assess financial liability against withdrawing employers. *See* 29 U.S.C. § 1381. The "withdrawal liability" payment compensates the plan for the shrinkage in the contribution base and the shifting to the plan of the remaining burden of funding that occurs when the employer withdraws. *See Central State Southeast and Southwest Areas Pension Fund v. Bellmont Trucking Co.*, 788 F.2d 428, 432 (7th Cir. 1986). Under section 1384, an employer going out of business can avoid withdrawal liability if, among other things, the transferee employer posts a bond or establishes an escrow account. The Western Conference of Teamsters Pension Trust Fund (the "Fund") made such assessment against Brentwood,[1] which contends that it has not incurred withdrawal liability.

## II

Before dealing with the parties' contentions, we first review the relevant facts. On January 5, 1981, Auto Processing Company ("APC") agreed to sell all of its tangible assets to Distribution and Auto Service, Inc. ("DAS"). Before going out of business, APC transferred all of its employees, save one, to DAS. APC transferred the one remaining employee to Brentwood which was, like APC, a subsidiary of Transco Corporation. Brentwood entered into a separate benefits agreement with the Fund for this remaining employee. The employee worked for Brentwood until April 1983, performing essentially the same tasks that he had performed for APC, and Brentwood continued to contribute to the pension plan on his behalf throughout that period.

On October 13, 1986, the Fund assessed withdrawal liability against Brentwood. The Fund determined that Brentwood had completely withdrawn from the pension plan in April 1983, when the last former APC employee left Brentwood. The Fund assessed this liability against Brentwood instead of APC under "common control" regulations prescribed by the Pension Benefit Guarantee Corporation. *See* 29 U.S.C. § 1301(b)(1).[2]

Brentwood requested that the Fund review the assessment in November 1986. Following the Fund's 1987 decision on review, Brentwood initiated arbitration in March 1987. The arbitrator rejected all of Brentwood's contentions in an award issued on December 7, 1987.

Brentwood filed an action in the district court on January 7, 1988, to vacate the

1. At the time of the activities in question, Brentwood was known as Auto Warehousing Company. For the purposes of this opinion, however, we will refer to Brentwood by its current corporate name (*i.e.*, "Brentwood").

2. Section 1301(b)(1) states that "all employees of trades or businesses ... which are under common control shall be treated as employed by a single employer...." As subsidiaries of Transco, Brentwood and APC were "trades or businesses" under "common control" within the meaning of 29 U.S.C. § 1301(b)(1). Therefore, the Fund was entitled to assess withdrawal liability against Brentwood rather than APC since both were under the common control of Transco.

award. The Fund filed a counterclaim and a third-party complaint against Transco (as a party under common control with Brentwood) to enforce the award. After considering cross-motions for summary judgment, the district court granted judgment for the Fund, affirming the arbitrator's decision and award. The district court also awarded attorney fees to the Fund. Brentwood now appeals.

### III

Brentwood contends that the Fund's withdrawal liability claim is barred by the statute of limitations and by laches.

### A

An action for withdrawal liability must be brought within the later of (1) six years after the date on which the cause of action arose, or (2) three years after the plaintiff knew or should have known of the existence of the claim. 29 U.S.C. § 1451(f). The parties agree that it is the six-year limitations period that is at issue here. Since this action was brought in January 1988, the Fund's cause of action would have had to accrue before January 1982 to be barred by the six-year statute of limitations.[3] Brentwood contends that the Fund's action did accrue before this time.

Although this court has not considered the question of when the six-year statute of limitations begins to run, other courts have addressed and split on this issue. The Seventh Circuit concluded that the limitations period begins to run when a "complete withdrawal" occurs. *See Trustees of Ironworkers Local 473 Pension Trust v. Allied Prods. Corp.*, 872 F.2d 208, 213 (7th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 143, 107 L.Ed.2d 102 (1989). The District of Columbia Circuit held, however, that the limitations period begins to run from the time the employer first fails to make the withdrawal payment demanded by the Plan. *See Joyce v. Clyde Sandoz*

*Masonry*, 871 F.2d 1119, 1122 (D.C.Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 280, 107 L.Ed.2d 260 (1989).

■ We need not choose between these two theories to resolve the dispute in the case before us. Under either theory, the Fund brought its action within the six-year limitations period. If the limitations period were to run from complete withdrawal, then the action would not be barred because Brentwood did not completely withdraw until well after January 1982. A complete withdrawal occurs when an employer "(1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." 29 U.S.C. § 1383(a). Here, Brentwood contributed to the plan on behalf of one bargaining-unit employee and continued covered operations until April 1983. Thus, it did not completely withdraw until that time.

■ Alternatively, the Fund brought its action within the six-year limitations period if we consider when Brentwood first failed to make a payment demanded by the Fund. *See Joyce*, 871 F.2d at 1122. Brentwood first failed to make this payment in October 1986, well within the limitations period.

In short, we conclude that the statute of limitations does not bar this action.

### B

Brentwood's laches argument arises under 29 U.S.C. § 1399(b)(1), which provides that a plan sponsor must notify the employer of his liability "[a]s soon as practicable after an employer's complete or partial withdrawal." Brentwood contends that the Fund failed to do this because, by the Fund's own admission, it could have notified Brentwood about its assessment of withdrawal liability at least as early as November 1984, but because of an alleged

---

**3.** For the sake of this opinion, we count backwards from the date the action was brought in the district court for the purposes of assessing Brentwood's statute of limitations argument under section 1451(f). We need not decide, however, whether the arbitration date is operative instead. Using either the date the action was brought in the district court or the date arbitration began, this action was timely under section 1451(f).

**1460**

mistake, it waited until October 1986.[4] Brentwood asserts that it was prejudiced by this two-year delay in notice because it was unable to cure the bonding defect to ensure its right to the sale of assets exception.

█ We disagree for two reasons. First, the delay in this case was not unreasonable. We find the Second Circuit's observation in a similar case particularly applicable here: "[I]n light of the complexity of the tasks imposed on the Fund under the statute and Congress' clear intent to *help* plans collect withdrawal liability, ... appellants' delay was [not] so unreasonable as to support a defense of laches." *ILGWU Nat'l Retirement Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879, 887 (2d Cir. 1988) (emphasis in original) (10–month delay in serving notice of liability not unreasonable); *see also Combs v. Western Coal Corp.*, 611 F.Supp. 917, 919 (D.D.C.1985) (one-year delay in serving notice not unreasonable).

█ Second, no prejudice resulted from the delay in notice. Brentwood was harmed by DAS's failure to secure a bond as required by section 1384 and cannot attribute this failure to delay in notice. Section 1384 requires that a bond be posted or an escrow account be established "for a period of 5 plan years ... beginning after the sale of assets." 29 U.S.C. § 1384(a)(1)(B). DAS could not have met this requirement in a timely manner even had Brentwood received notice of its withdrawal liability in November 1984. Moreover, the delay did not harm Brentwood financially because no interest accrued on the liability until the Fund mailed its notice and demand. *See Loomis Armored, Inc. and Central States Pension Fund*, 8 Employee Benefits Cas. (BNA) 1899, 1918–22 (1987); *Casablanca Indus., Inc. and UFCW Local 23—Giant Eagle Pension Fund*, 7 Employee Benefits Cas. (BNA) 2705, 2726–27 (1986).

For both of these reasons, laches does not bar this action.

**IV**

█ Brentwood challenges the arbitrator's decision that it failed to satisfy the bond or escrow account requirement of 29 U.S.C. § 1384. Brentwood contends that the sale of assets to DAS "substantially complied" with section 1384 and, therefore, Brentwood is not liable to the Fund for withdrawal liability.

**A**

"Substantial compliance," however, is simply not good enough here. Courts have repeatedly emphasized that section 1384 provides a very limited exception to the withdrawal liability rules and should be narrowly construed. *See, e.g., New York State Teamsters Conference Pension & Retirement Fund v. St. Lawrence Transit Mix Corp.*, 612 F.Supp. 1003, 1009 (N.D.N.Y.1985); *Don Hutson, Inc. and Central States, Southeast and Southwest Areas Pension Fund*, 8 Employee Benefits Cas. (BNA) 2319, 2324 (1987); *Robbins v. Lehman Transp., Inc.*, 7 Employee Benefits Cas. (BNA) 2086, 1986 WL 9158 (D.Minn. 1986). Failure to comply with the bond requirement of section 1384(a) "alone, conclusively demonstrates that [the employer has] not satisfied the requirements of the sale of assets exception." *Robbins*, 7 Employee Benefits Cas. at 2089; *see also St. Lawrence Transit Mix Corp.*, 612 F.Supp. at 1009 ("the employer cannot use section 1384 as an exemption unless the three conditions of section 1384(a)(1) are first met").

The parties to the sale of assets agreement did not strictly comply with the bond or escrow requirement of section 1384(a)(1). It is undisputed that neither APC nor DAS ever posted a bond or set up an escrow account despite their agreement to do so. Because of APC's failure to satisfy this requirement, Brentwood (as a party under common control with APC) cannot have the

---

**4.** Brentwood asserts that the Fund perhaps should have known that it had a claim for withdrawal liability as early as July 29, 1982, when Brentwood filed an asset-sales questionnaire with the Fund. We reject this contention since we have found that Brentwood completely withdrew from the Plan no earlier than April 1983.

benefit of the sale of assets exception to the withdrawal liability rule.

## B

█ Brentwood argues alternatively, however, that even if APC did not satisfy the bond or escrow account requirement, APC "substantially satisfied" an exception to this requirement.[5] Under 29 C.F.R. § 2643.11(a) (1989), a purchaser's bond or escrow, normally required by section 1384(a)(1)(B), is not required if, among other things, *"the parties* to the sale inform the Plan in writing of *their* intention that the sale be covered by section [1384]"* (emphases added). Brentwood contends that it satisfied this exception by its request for review and its notice to the Fund of its intention to arbitrate the Fund's demand for withdrawal liability. Brentwood argues that since DAS was a party to the sale of assets agreement that was designed to invoke section 1384, APC had an implied agency to give notice to the Plan on behalf of both APC and DAS concerning entitlement to an exception from withdrawal liability under section 1384.

We are not persuaded by this argument. DAS acknowledged that it never requested a waiver of the bond requirement or joined with APC in such a request. This admission defeats Brentwood's argument that it had an implied agency to act for DAS in requesting a waiver of APC's bond requirement. Moreover, the practical effect of Brentwood's argument would be to do away with the requirement for notification by "the parties."

Brentwood also contends that even if the "parties" to the sale agreement did not notify the Plan, it was sufficient if APC alone did so. To support this assertion, Brentwood points to PBGC Opinion Letter 86–6 which states that "[a] *seller* may ... lose the benefit of section [1384] if it does not timely assert section [1384] as a defense to a Plan's claim for withdrawal liability" (emphasis added). Brentwood ar-

gues that this letter demonstrates that it is sufficient if the seller alone gives notice.

Brentwood misreads this interpretive letter when it argues that the seller alone may apply for a waiver of the bond/escrow requirements. The letter merely states that the seller may lose the benefit of section 1384 if it does not make a timely defense to a Plan's claim for withdrawal liability. The letter does not purport to say anything about the need for joint or individual notice.

## C

█ Brentwood finally argues that the failure of DAS to post the bond did not damage the Fund. The Fund responds that it is legally irrelevant whether it was harmed by Brentwood's failure to post the bond.

We agree with the Fund. The pertinent question is whether the statutory requirements have been satisfied in full, not whether equitable considerations might warrant a different result in the case. *See H.C. Elliott, Inc. v. Carpenters Pension Trust Fund,* 859 F.2d 808, 813 (9th Cir. 1988) ("windfall" to Fund irrelevant), *cert. denied,* ── U.S. ──, 109 S.Ct. 1934, 104 L.Ed.2d 406 (1989); *Central States, Southeast and Southwest Areas Pension Fund v. Bellmont Trucking,* 788 F.2d at 434 (alleged "unjust enrichment" to the Fund does not preclude withdrawal liability where statute clearly imposes such liability upon the employer).

## V

The Fund requests that we grant it attorney fees and costs associated with this appeal. Under ERISA, the award of reasonable attorney fees and costs to a pension plan is mandatory in all actions to collect delinquent contributions. 29 U.S.C. § 1132(g)(2)(D). "This mandatory attorney fees and costs provision ... includ[es] actions to collect unpaid employer withdrawal liabilities." *Trustees of Amalgamated*

---

5. We remind the reader at this point that Brentwood is arguing on behalf of APC because both companies were under the "common control" of

Transco and are treated as a single employer for withdrawal liability purposes. *See supra* p. 1458 note 2.

*Ins. Fund v. Geltman Indus. Inc.*, 784 F.2d 926, 931–32 (9th Cir.), *cert. denied,* 479 U.S. 822, 107 S.Ct. 90, 93 L.Ed.2d 42 (1986). Attorney fees and costs are therefore granted and the Fund is ordered to submit affidavits in support of its request within twenty days of the filing of this opinion.

AFFIRMED.