**BOARD OF TRUSTEES OF THE CONSTRUCTION LABORERS PENSION TRUST FOR SOUTHERN CALIFORNIA, Plaintiff–Appellant,**

v.

**Russell L. THIBODO; Gary R. Thibodo; Thibodo Construction Co. Inc.; Drainage Construction Co., Defendants–Appellees.**

**BOARD OF TRUSTEES OF THE CONSTRUCTION LABORERS PENSION TRUST FOR SOUTHERN CALIFORNIA, Plaintiff–Appellant–Appellee,**

v.

**Russell L. THIBODO; Thibodo Construction Co. Inc., Defendants–Appellees–Appellants.**

Nos. 93–55079, 93–55080.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 8, 1994.

Decided Sept. 12, 1994.

John S. Miller, Jr., Cox, Castle & Nicholson, Los Angeles, CA, for plaintiff-appellant-appellee.

Andrew C. Muzi, Andrade & Associates, Irvine, CA, for defendants-appellees-appellants.

Before: FLETCHER, CANBY and HALL, Circuit Judges.

CANBY, Circuit Judge:

The Board of Trustees of the Construction Laborers' Pension Trust for Southern California appeals the district court's dismissal of this action in which the Trustees sought to enforce an arbitration award. The arbitrator had determined that Russell Thibodo was personally liable to the Trust for ERISA withdrawal liability incurred as a result of his construction company's complete withdrawal from the Construction Laborers Pension Plan in 1983. The district court, however, held that the Trustees' action was barred by ERISA's six-year statute of limitations.

We reverse and remand to the district court.[1]

## STATUTORY BACKGROUND

ERISA, as modified by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), is designed to ensure the financial integrity of multiemployer pension funds. *See generally Joyce v. Clyde Sandoz Masonry*, 871 F.2d 1119 (D.C.Cir.), *cert. denied*, 493 U.S. 918, 110 S.Ct. 280, 107 L.Ed.2d 260 (1989). One mechanism for attaining this goal is the Act's requirement that employers who withdraw from multiemployer plans remain liable for a statutory share of the plan's "unfunded vested benefits." *See* 29 U.S.C. §§ 1381, 1399; *Joyce*, 871 F.2d at 1120.

Much of the confusion surrounding this case is due to the fact that, at least with regard to the construction industry, when "complete withdrawal" occurs is determined differently under two different sections. The first determination under 29 U.S.C. § 1383(b)(2) is for the purpose of establishing whether the employer has, in fact, withdrawn and liability for continuing contributions has ended. The second determination is for the purpose of establishing the amount of withdrawal liability. The former determination is made under sections 1383(b)(2)(A) and (B). An employer is deemed to have completely withdrawn from the plan if:

(A) [the] employer ceases to have an obligation to contribute under the plan, and

(B) the employer—

(i) continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required, or

(ii) resumes such work within 5 years after the date on which the obligation to contribute under the plan ceases, and does not renew the obligation at the time of the resumption.

29 U.S.C. §§ 1383(b)(2)(A), (B). It may readily be seen that conditions (A) and (B) may not be met for up to 5 years after an employer's duty to make regular contributions to the fund has ceased. Indeed, as we will see, the employer in the present case did not effectuate "complete withdrawal" until two years after it ceased contributions to the plan.

Different statutory provisions, however, determine the "date of complete withdrawal" for purposes of calculating the amount of withdrawal liability. For that purpose, the date of "complete withdrawal" is deemed to be the "date of the cessation of the obligation to contribute." 29 U.S.C. § 1383(e). This date, or, more accurately, the year in which this date falls, is instrumental in determining the amount of the employer's withdrawal liability. *See* 29 U.S.C. § 1391(b)(2) (amount of unfunded vested benefits that existed on the last date of the plan year preceding the year in which the employer withdrew is the

---

**1.** Thibodo cross-appeals the district court's denial of his motion for attorneys' fees. In light of our disposition, we dismiss the cross-appeal as moot.

amount for which the employer owes a contribution).

Civil actions to collect unpaid withdrawal liability amounts may not be brought after the later of: (1) six years after the date on which the cause of action arose; or (2) three years after the earliest date on which the plaintiff acquired or should have acquired actual knowledge of the existence of such cause of action, with one exception not relevant to this case. *See* 29 U.S.C. § 1451(f).

## FACTUAL BACKGROUND

The Trust is the plan sponsor for the Construction Laborers Pension Plan (the Plan). Thibodo Construction Co., Inc. contributed to the Plan pursuant to its collective bargaining agreement (CBA) with the Laborers Union until June 15, 1983, the date upon which the CBA expired. In early 1984, the Trustees believed that the company had withdrawn from the Plan and therefore owed withdrawal liability as provided in ERISA under the MPPAA. They sent the company an assessment notification and payment schedule. The company disputed the assessment, however, and in July 1984 the Trustees agreed that the assessment was erroneous because the company had not employed any laborers since the expiration of its CBA with the union. *See* 29 U.S.C. § 1383(b)(2)(B). The Trustees warned, however, that the company would owe withdrawal liability if it resumed hiring laborers.

In the Spring of 1985, the company resumed hiring laborers to perform work within the jurisdiction of the Plan. When the Trustees became aware of this resumption, they reinstated the company's withdrawal liability assessment, but the company made no payments to the Plan in response to the assessment. Nothing more transpired until April 1986, when the Trustees notified the company that it must begin making payments on the assessment within 60 days. Having received no payments from the company, the Trustees initiated this lawsuit in the district court on June 20, 1989, six years and five days after the expiration of the company's CBA.

The district court agreed to stay its proceedings so that the parties could submit the following issues for arbitration: (1) whether the company had completely withdrawn from the plan in 1983; and (2) whether Thibodo, the company's sole shareholder, was personally and individually liable for the company's withdrawal liability. The arbitrator concluded that the company had withdrawn from the plan on June 15, 1983,[2] and that Thibodo was personally liable for the company's withdrawal liability.[3]

After the arbitrator's decision, the Trustees moved the district court to enforce the arbitration award. In opposition, Thibodo asserted that the Trustees' district court action had been filed beyond the limitations period provided in ERISA. The district court agreed with Thibodo and dismissed the action.

## DISCUSSION

■ We must decide when the statute of limitations begins to run for actions to recover withdrawal liability payments under ERISA and the MPPAA. We hold that, for actions to recover withdrawal liability incurred as a result of complete withdrawal

---

2. The Trustees dispute this determination by arguing that Thibodo had a legal obligation to continue payments to the plan for a short time beyond the CBA's expiration on June 15, 1983. *See* 29 U.S.C. § 1383(e) (date of complete withdrawal is the date that the employer ceased to have an obligation to contribute to the plan). Thus, they argue, the "date of complete withdrawal" was later than June 20, 1983. If this argument were accepted, then the Trustees' action would be timely regardless of whether the limitations period began to run on the "date of complete withdrawal" as defined in § 1383(e).

 We need not address the question of when Thibodo's obligation to contribute ceased be-

cause we conclude that the limitations period does not run from the date of complete withdrawal as defined in § 1383(e). For the same reason we need not address the parties' contentions pertaining to: (1) whether the arbitrator improperly decided an issue not before it when it determined an exact date on which Thibodo withdrew; and (2) whether the district court should have deferred to the arbitrator's determination of the date of complete withdrawal.

3. We express no opinion regarding the correctness of this determination.

under 29 U.S.C. § 1383(b), the limitations period begins to run from the date that the conditions for withdrawal specified under that section are met. In this case, that date fell sometime in the Spring of 1985, when the company resumed work of the type for which contributions were previously required.

The district court concluded that the limitations period began running on June 15, 1983, which the arbitrator determined to be the "date of complete withdrawal" as defined in § 1383(e).[4] We repudiate that conclusion because, under the district court's approach, the limitations period was running against the Trustees before they acquired a cause of action against Thibodo. For purposes of limitations, Thibodo's complete withdrawal from the Plan occurred in the Spring of 1985 when his company resumed employing laborers, because only then were the statutory conditions for complete withdrawal met. 29 U.S.C. § 1383(b)(2). Before that time, the Trustees had no right to assess or receive withdrawal liability payments from Thibodo. Indeed, the Trustees realized as much in 1984 when they withdrew their original assessment. It is anomalous to conclude that the limitations period of § 1451(f) was running against the Trustees before they had a right to sue.

For the purpose of calculating the amount of withdrawal liability under § 1391, it is useful to fix the "date of complete withdrawal" as the date when the duty of regular contribution ceased. *See* 29 U.S.C. § 1383(e); *Joyce*, 871 F.2d at 1123. But in the case of a withdrawal in the construction industry, selection of such a date may involve a considerable period of relation back, as it does in the present case. The fact that it is useful to relate back for purposes of calculation of liability, however, does not mean that it is useful to relate back for purposes of the statute of limitations. Limitations run from "the date on which the cause of action arose." 29 U.S.C. § 1451(f)(1).

■ We conclude, therefore, that the limitations period of § 1451(f) begins to run from the date on which the conditions for complete withdrawal specified in § 1383(b)(2) have been met—in this case, the Spring of 1985. Because the Trustees' action was initiated within six years of the Company's resumption of covered work, their action is timely and the district court erred in dismissing it.

We recognize that our approach differs from that taken by the D.C. Circuit. In *Joyce*, that Circuit concluded that the limitations period does not begin to run until the plan makes a demand upon the employer for withdrawal liability payments and the employer refuses that demand.[5] *Joyce*, 871 F.2d at 1124; *see also ILGWU Nat'l Retirement Fund v. Smart Modes of Cal., Inc.*, 735 F.Supp. 103, 106 (S.D.N.Y.1990) (adopting *Joyce* approach in § 1383(a) withdrawal liability action). In our view, that approach improperly places the running of the limitations period in the control of the plaintiff.

In deciding that the limitations period does not begin to run until a demand for payment goes unmet, the District of Columbia Circuit was influenced by the difficulty of determining when an employer had "permanently" ceased to have an obligation to contribute or "permanently" ceased all covered operations, within the meaning of § 1383(a). *Joyce*, 871 F.2d at 1123–24. Whatever the difficulties might be under that subsection, we conclude that the construction industry provisions of § 1383(b) do not lead to debilitating uncertainty concerning whether an employer has completely withdrawn. Determining whether an employer continues to perform work of the type for which contributions were re-

---

**4.** We note that Thibodo has been unable to cite to any federal court opinion in which this approach has been adopted. His assertion that the Seventh Circuit adopted this approach in *Trustees of Iron Workers Local 473 Pension Trust v. Allied Prods. Corp.*, 872 F.2d 208 (7th Cir.), *cert. denied*, 493 U.S. 847, 110 S.Ct. 143, 107 L.Ed.2d 102 (1989), is erroneous. That case says nothing about when the limitations period for withdrawal liability actions begins to run. Our statement to the contrary in *Brentwood Financial Corp. v.* *Western Conference of Teamsters Pension Trust Fund*, 902 F.2d 1456, 1459 (9th Cir.1990), was incorrect. *See Central States, Southeast and Southwest Areas Pension Fund v. Navco*, 3 F.3d 167, 170–71 (7th Cir.1993), *cert. denied* — U.S. ——, 114 S.Ct. 1062, 127 L.Ed.2d 382 (1994).

**5.** The District of Columbia Circuit's approach would not aid Thibodo, of course, because it selects a date even later than the one we choose.

quired, or resumes such work within 5 years is relatively straightforward. *See* 29 U.S.C. 1383(b)(2)(B).[6] We see no reason, therefore, to choose a date of limitations that is in the control of the plaintiff and, theoretically at least, might not be triggered for many years.[7] We also consider our rule to involve a more natural construction of § 1451(f), which sets the limitation as "6 years after the date on which the cause of action arose, or 3 years after the earliest date on which the plaintiff acquired or should have acquired knowledge of the existence of such cause of action." There is little reason for the second clause if the cause of action does not come into existence until demand for payment is made and refused.

For these reasons, we decline to adopt the D.C. Circuit's approach—at least with respect to § 1383(b) withdrawals—and hold that for actions to collect withdrawal liability incurred under 29 U.S.C. § 1383(b), the limitations period found in 29 U.S.C. § 1451(f) begins to run on the date that the statutory conditions for withdrawal are met. Because the Trustees brought this action well within six years after that date, it is not time-barred.

No. 93–55079 REVERSED and RE-MANDED.

No. 93–55080 DISMISSED.

---

**6.** We do not decide whether the potential difficulties of determining when an employer has "permanently" ceased covered operations under § 1383(a) warrants adoption of the D.C. Circuit's approach in suits seeking recovery of withdrawal liability incurred under that section.

**7.** The District of Columbia Circuit opined that there were several incentives for plan sponsors to act promptly in demanding payment of withdrawal liability. *Joyce,* 871 F.2d at 1126–27. There may be, but control still remains with the plaintiff.